**STATE OF HAWAII**, Plaintiff–Appellee, v. **ISAGANI P. BRIONES**, Defendant–Appellant

NO. 13262

(CR. NO. 87–0564)

DECEMBER 14, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY HAYASHI, J.

Defendant–Appellant Isagani P. Briones (Defendant) appeals from the judgment of conviction and sentence entered in the First Circuit Court on July 25, 1988. Following a jury trial, Defendant was found guilty of, and sentenced to, the following: Count I) attempted first degree murder (HRS §§ 705–500 and 707–701(1)(a)), life imprisonment without the possibility of parole; Count II) second degree murder (HRS § 707–701.5(1)), life imprisonment with the possibility of parole; Count III) attempted second degree murder (HRS §§ 705–500 and 707–701.5(1)), life imprisonment with the possibility of parole; Count IV) place to keep a firearm (HRS § 134–6), five years; and Count V) possession of a firearm by a person indicted for certain crimes (HRS § 134–7(b)), five years. All terms of imprisonment to run concurrently with each other.

We affirm the conviction and sentence as to the attempted first degree murder offense (Count I) and the two firearm offenses (Counts IV and V), reverse the conviction and sentence as to the second degree murder offense (Count II) and the attempted second

degree murder offense (Count III), and remand with instructions to dismiss Counts II and III.

## I.
## FACTUAL BACKGROUND

During the early evening hours of May 3, 1987, several individuals, including Jessie Peralta (Peralta) and Florecindo Queja, Jr. (Queja), were eating and drinking outside the Peralta residence. Somewhere between 9:00 – 9:30 p.m., Ruben Ancheta (Ancheta) joined the gathering, in an apparent drunken state. The testimonial evidence as to what occurred during this encounter was conflicting.

According to the testimony of one of the individuals present at the Peralta residence, Harry Beltran (Beltran), Ancheta was at the gathering for about ten to fifteen minutes, then was advised to leave, since he was talking loud and acting drunk. Without argument, Ancheta then left.

Ancheta, on the other hand, testified that when he left another party on the same street, as he passed the Peralta residence, Ancheta heard his name being called, so he stopped to join the gathering. After about ten minutes, Ancheta left to move his car, then returned because he was told to come back. At approximately 9:30 p.m., Ancheta left, "[b]ecause they make trouble, they like fight me." Transcript of May 24, 1988 at 112–13.

Ancheta then drove to a friend's house, where several individuals, including Defendant and Ernesto Cordero (Cordero), were present. Ancheta told them he had just come from the Peralta residence, where the persons there had made trouble to him. Shortly thereafter, Ancheta and Cordero each drove their cars to the Peralta residence. Defendant was a passenger in Ancheta's car.

According to Ancheta's testimony, when they reached the Peralta residence, Ancheta and Cordero got out of the cars, but not Defendant. And according to Beltran's testimony, Peralta then came out from a neighboring residence, while Queja was seated outside in the front of Ancheta's car. Several individuals then exchanged words.

Beltran further testified that approximately five minutes later, the passenger in Ancheta's car got out and told them that they were making trouble to Ancheta. The passenger then got a shotgun from the car, aimed towards Queja, shot Queja, then he pumped the gun again and started shooting Peralta. After he shot Peralta, he pumped the gun again, and the others ran behind the houses. At trial, Beltran identified Defendant as the person who shot Queja and Peralta.

At about 11:00 p.m., Queja was pronounced dead in the driveway of the Peralta residence. Peralta, meanwhile, sustained injury but survived.

In May 1987, Defendant was charged by complaint with the following offenses: I) attempted first degree murder; II) second degree murder; III) attempted second degree murder; IV) place to keep a firearm; and V) possession of a firearm by a person indicted for certain crimes. As to the attempted first degree murder count, the complaint charged that Defendant intentionally shot Peralta and Queja "in the same incident[.]" Record at 2.

Jury trial commenced on May 23, 1988. During State's case-in-chief, State and defense counsel stipulated that on the date of the incident in question, May 3, 1987, Defendant was under indictment for a felony.

Following deliberations, Defendant was found guilty as charged of all five offenses.

After the entry of the judgment and sentence, Defendant timely appealed.

## II.
## MURDER

We begin with a review of the pertinent statutes of the Hawaii Penal Code: 1) criminal attempt (HRS § 705–500); 2) murder in the first degree (HRS § 707–701); 3) murder in the second degree (HRS § 707–701.5); and 4) sentencing (HRS § 706–656).

HRS § 705–500 (1985) provides in pertinent part:

**Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if he:

. . . .

(b)   Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

(2)   When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

HRS § 707–701 (Supp. 1989), in turn, reads (emphasis added):

**Murder in the first degree.** (1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of:

(a)   *More than one person in the same or separate incident*;

(b)   A peace officer, judge, or prosecutor arising out of the performance of official duties;

(c) A person known by the defendant to be a witness in a criminal prosecution;

(d) A person by a hired killer, in which event both the person hired and the person responsible for hiring the killer shall be punished under this section; or

(e) A person while the defendant was imprisoned.

(2) Murder in the first degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

And HRS § 707–701.5 (Supp. 1989) states (emphasis added):

**Murder in the second degree.** (1) *Except as provided in section 707–701*, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

(2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

In terms of sentencing for first and second degree murder and attempted first and second degree murder, HRS § 706–656 (Supp. 1989) mandates in pertinent part (emphasis added):

**Terms of imprisonment for first and second degree murder and attempted first and second degree murder.** (1) Persons convicted of first degree murder or first degree attempted murder shall be sentenced to *life imprisonment without possibility of parole*.

. . . .

(2) Persons convicted of second degree murder and attempted second degree murder shall be sentenced to *life imprisonment with possibility of parole*.

In this criminal prosecution, Defendant was convicted of three murder offenses: I) attempted first degree murder (HRS §§ 705–500 and 707–701(1)(a)) as to Queja and Peralta; II) second degree murder (HRS § 707–701.5(1)) as to Queja; and

III) attempted second degree murder (HRS §§ 705–500 and 707–701.5(1)) as to Peralta.

The fundamental starting point for interpreting a statute is the language of the statute itself. *State v. Eline*, 70 Haw. 597, 778 P.2d 716 (1989); *see also State v. Paaluhi*, 70 Haw. 237, 768 P.2d 235 (1989).

This court's primary duty in interpreting statutes is to ascertain and give effect to the legislature's intention and to implement that intention to the fullest degree. *State v. Tupuola*, 68 Haw. 276, 711 P.2d 1289 (1985); *see also State v. Himuro*, 70 Haw. 103, 761 P.2d 1148 (1988). Moreover, in the absence of clear legislative intent to the contrary, the legislature's intention is primarily obtained from the language of the statute itself, although legislative history may still be considered. *See State v. Eline*, 70 Haw. 597, 778 P.2d 716 (1989); *State v. Himuro*, 70 Haw. 103, 761 P.2d 1148 (1988); *State v. Tupuola*, 68 Haw. 276, 711 P.2d 1289 (1985). And where there exists no ambiguity in the language of the statute, the statute must be given effect according to its plain and obvious meaning. *State v. Palama*, 62 Haw. 159, 612 P.2d 1168 (1980). In addition, HRS § 1–16 (1985) instructs that "[l]aws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other."

Effective January 1, 1987, the Hawaii Penal Code was amended to create two degrees of murder — first degree and second degree. *See* Act 314, §§ 1, 49–50 and 80, 1986 Haw. Sess. Laws 593, 615–16 and 629. Prior to this amendment, the murder statute, HRS § 707–701 (1985), formerly read:[1]

---

[1] The "[e]xcept as provided in section 707–702[]" language, as contained in subsection (1) of the former murder statute, referred to the manslaughter statute then in effect, HRS § 707–702 (1985).

**Murder.** (1) Except as provided in section 707–702, a person commits the offense of murder if he intentionally or knowingly causes the death of another person.

(2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706–606.

In terms of sentencing for murder, HRS § 706–606 (1985) formerly instructed in pertinent part (emphasis added):

**Sentence for offense of murder.** The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:

(a) *Life imprisonment without possibility of parole* in the murder of:

(i) A peace officer while in the performance of his duties, or

(ii) A person known by the defendant to be a witness in a murder prosecution, or

(iii) A person by a hired killer, in which event both the person hired and the person responsible for hiring the killer shall be punished under this subsection, or

(iv) A person while the defendant was imprisoned.

. . . .

(b) *Life imprisonment with possibility of parole* in all other cases.

*See also* HRS § 706–606.1 (1985) (sentence for the offense of attempted murder).

The first degree murder statute, HRS § 707–701, codifies five specific categories where a conviction for first degree murder is authorized. Four of these categories were previously codified under subsection (a) of the former sentencing statute for murder,

*see* HRS § 706–606(a) (1985), and provided for a maximum term of life imprisonment without the possibility of parole. If none of these four categories applied, HRS § 706–606(b) (1985) thus mandated a maximum term of "[l]ife imprisonment with [the] possibility of parole in all other cases." Act 314 of the 1986 Hawaii Session Laws, codified an additional category for first degree murder, effective January 1, 1987: where a person intentionally or knowingly causes the death of "[m]ore than one person in the same or separate incident[.]"

While HRS § 707–701 was amended to authorize a first degree murder conviction in certain specific instances, the second degree murder statute, HRS § 707–701.5, effectively retained the definitional language of the former murder statute. This language, however, is now preceded by the following significant phrase: "Except as provided in section 707–701 . . . ."

In viewing the unambiguous language as contained in the exception clause of HRS § 707–701.5, its plain and obvious meaning is that the legislature intended to create two separate and distinct penal offenses — first degree murder and second degree murder. A person commits the offense of second degree murder if he intentionally or knowingly causes the death of another person, HRS § 707–701.5, *except as provided in HRS § 707–701*, in which case a person commits the offense of first degree murder if he intentionally or knowingly causes the death of more than one person in the same or separate incident, or the death of another person in certain enumerated instances.

In the instant case, because the exception clause of HRS § 707–701.5 directs the factfinder to first consider the elements of first degree murder, as codified in HRS § 707–701(1)(a), once it found Defendant guilty of the inchoate crime of attempted first degree murder, it was precluded from also considering the second degree murder and attempted second degree murder charges. Accordingly, we hold that Defendant's attempted first degree

murder conviction precluded his second degree murder and attempted second degree murder convictions.[2]

## III.
## CONCLUSION

Based on the foregoing reasons, we affirm the conviction and sentence as to the attempted first degree murder offense (Count I) and the two firearm offenses (Counts IV and V), reverse the conviction and sentence as to the second degree murder offense (Count II) and the attempted second degree murder offense (Count III), and remand with instructions to dismiss Counts II and III.

Affirmed in part, reversed in part, and remanded for further action consistent with this opinion.

*Martin A. Steinberg*, for Defendant–Appellant.

*Vickie L. Silberstein*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

---

[2] The fact that the jury also decided Count II (second degree murder) and Count III (attempted second degree murder) is harmless error with respect to Count I (attempted first degree murder).