**ISAGANI BRIONES**, Petitioner–Appellant, v. **STATE OF HAWAII**, Respondent–Appellee

NO. 15833

(Special Proceedings – Prisoner No. 91–0008)

MARCH 31, 1993

LUM, C.J., MOON, KLEIN, AND LEVINSON, JJ., CIRCUIT JUDGE SOONG, IN PLACE OF WAKATSUKI, J., DECEASED

OPINION OF THE COURT BY KLEIN, J.

Petitioner Isagani P. Briones (Petitioner) seeks review of a circuit court order dismissing his Hawaii Rules of Penal Procedure (HRPP) Rule 40 petition, which sought to vacate his conviction of attempted first degree murder in violation of Hawaii Revised Statutes (HRS) §§ 705–500 (1985) and 707–701(1)(a) (Supp. 1992). Relying on our opinion in *State v. Briones*, 71 Haw. 86, 784 P.2d 860 (1989), the trial court determined that the petition was frivolous and thus no evidentiary hearing was held. *See* HRPP 40(f).[1] In *Briones*, we reversed Petitioner's convictions of attempted second degree murder and second degree murder, in violation of HRS §§ 705–500 and 707–701.5 (Supp. 1992). Later, the circuit court dismissed both charges in accordance with our instructions. Our affirmance of petitioner's conviction and sentence for attempted first degree murder yielded the petition, the dismissal of which we now review. Because we agree with Petitioner in certain respects, we reverse his conviction of attempted first degree murder and remand to circuit court

---

[1] HRPP Rule 40(f) provides in pertinent part:

However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

for a new trial. Although the facts of this case are ably set out in *State v. Briones, supra,* a brief summary is useful.

## I. FACTS

Shortly after arriving uninvited at a party on May 3, 1987, Petitioner allegedly took a shotgun from the car in which he arrived then shot and killed one person, pumped the gun, then shot and wounded another person. Both victims were guests at the party.

Petitioner was charged as follows:

*Count I* – Attempted first degree murder for the attempted murder of more than one person "in the same incident," in violation of Hawaii Revised Statutes (HRS) §§ 705–500 and 707–701(1)(a);

*Count II* – Second degree murder for causing the death of the first victim, in violation of HRS § 707–701.5(1);

*Count III* – Attempted second degree murder for attempting to cause the death of the second victim, in violation of HRS §§ 705–500 and 707–701.5(1);

*Count IV* – Place to keep firearm, in violation of HRS § 134–6 (1985); and

*Count V* – Possession of a firearm by a person indicted for certain crimes, in violation of § 134–7(b) (1985).

Petitioner was convicted by a jury on all five counts. At trial, Petitioner's counsel objected that convicting Petitioner of Count I as well as Counts II and III violated the double jeopardy prohibitions of the State and Federal constitutions as well as HRS § 701–109(1)(a) (1985) because Counts II and III were included and derivative offenses of

Count I.[2]  No objections were raised as to Petitioner's convictions on Counts IV and V.

Petitioner's counsel further argued at trial that the death of the first victim rendered Petitioner's conviction of attempted murder in the first degree (Count I) an impossibility, because one cannot be convicted of an inchoate, attempted crime as well as the substantive crime itself. The trial court resolved the issues by denying defense counsel's objections and imposing sentences on all five counts.

Petitioner's counsel reasserted his arguments on appeal. Without directly addressing the double jeopardy issue,[3] we affirmed Petitioner's conviction and sentence

---

[2] HRS § 701–109 provides in pertinent part:

  (1)  When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element.  He may not, however, be convicted of more than one offense if:

  (a)  One offense is included in the other, as defined in subsection (4) of this section . . .
  . . . .

  (4)  A defendant may be convicted of an offense included in an offense charged in the indictment or the information.  An offense is so included when:

  (a)  It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

  (b)  It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

  (c)  It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

[3] Petitioner's argument concerning lesser included offenses pursuant to HRS § 701–109(1)(a) and (4)(a)–(c), *see supra* note 1, is inapplicable to the separate offenses of one count of first degree murder and

on Count I but reversed his convictions on Counts II and III, and remanded the case for dismissal of those two counts based upon the trial court's violation of an express statutory provision:

> [B]ecause the exception clause of HRS § 707–701.5 directs the fact finder to first consider the elements of first degree murder, as codified in HRS § 707–701(1)(a), once it found Defendant guilty of the inchoate crime of attempted first degree murder, it was precluded from also considering the second degree murder and attempted second degree murder charges.

*State v. Briones*, 71 Haw. at 94, 784 P.2d at 864.

HRS § 707–701.5(1) states:

> *Except as provided in section 707–701* [first degree murder], a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

(Emphasis added.)

Petitioner is currently serving a prison sentence of life *without* parole, as a result of his conviction of attempted first degree murder (Count I). Had Petitioner been convicted of either Count II or III, or both, the sentence would have included the possibility of parole. Petitioner retained different counsel and filed a Rule 40

---

several counts of second degree murder: Under § 701–109(4)(a), even if an additional fact needs to be proved to find first degree murder, a *separate* state of mind needs to be established; § 701–109(4)(b) is obviously inapplicable; and § 701–109(4)(c)'s "different state of mind" refers to the *culpability* distinctions between intentionally, knowingly, recklessly, and negligently. Accordingly, second degree murder is not a lesser included offense of first degree murder. Appellant's final point also holds no merit.

petition for post–conviction relief. The trial court dismissed the petition and this timely appeal followed.

## II.
### A. Impermissible Presumption of Guilt

Petitioner asserts that the judge's instructions to the jury concerning Counts I, II, and III, combined with the prosecutor's explanation in closing argument, led the jury to conclude that if petitioner were guilty of second degree murder (Count II) and attempted second degree murder (Count III), then petitioner was automatically guilty of attempted first degree murder (Count I). Petitioner maintains that he was prejudiced by his prior counsel's failure to raise this issue at trial and on appeal. We disagree.

The judge sufficiently instructed the jury regarding the elements of the individual counts. The judge's instructions in pertinent part were:

> There are three elements to the offense of attempted murder in the first degree, each of which the prosecution must prove beyond a reasonable doubt. If the prosecution has done so, you must find the defendant guilty as charged. If the prosecution has not done so, you must find the defendant not guilty.
>
> The three elements are:
>
> 1. The defendant, Isagani P. Briones, shot Jessie Peralta and Floracindo Queja, Jr. *in the same incident*;
>
> 2. The defendant did so intentionally;
>
> 3. Defendant's conduct, under the circumstances as he believes them to be, was a substantial step in a course of conduct intended to cause

the death of Jessie Peralta and Floracindo Queja, Jr.

The defendant, Isagani P. Briones, is charged in Count II of the complaint, with the offense of murder in the second degree of Floracindo Queja, Jr.

There are two elements to the offense of murder in the second degree, each of which the prosecution must prove beyond a reasonable doubt. If the prosecution has done so, you must find the defendant guilty as charged. If the prosecution has not done so, you must find the defendant not guilty.

The two elements are:

1. The defendant, Isagani Briones, caused the death of Floracindo Queja, Jr. by shooting him in an incident separated in time;

2. The defendant did so intentionally or knowingly.

There are three elements to the offense of attempted murder in the second degree, each of which the prosecution must prove beyond a reasonable doubt. If the prosecution has done so, you must find the defendant guilty as charged. If the prosecution has not done so, you must find the defendant not guilty.

The three elements are:

1. The defendant, Isagani P. Briones, shot Jessie Peralta in an incident separated in time;

2. The defendant did so intentionally;

3. Defendant's conduct, under the circumstances as he believes them to be, was a substan-

tial step in a course of conduct intended to cause the death of Jessie Peralta. (Emphasis added.)

The prosecutor's explanation in closing argument was similar:

In addition to that, and here we come to the principal charge, murder in the first degree and the phrase there is "in the same incident". If you find that in one event, he killed Floracindo Queja and in a separate event, he tried to kill Jessie Peralta *and that both of those events were part of a single course of action*, then he is guilty of attempted murder in the first degree.

(Emphasis added.)

It is clear that the jury, despite petitioner's assertions to the contrary, was required to find the element of "in the same incident", or "part of a single course of action", in order to find petitioner guilty of attempted first degree murder.[4] No "presumption of guilt" occurred as a result of either the judge's instructions or the prosecutor's argument. Our assessment that the issue lacks merit, no matter when raised, effectively disposes of any claim of error arising out of a failure to present the issue for review.

## B. Right to a Fair Jury Trial and Ineffective Assistance of Counsel

The second point petitioner raises is that the Hawaii Supreme Court violated Petitioner's right to trial by jury when it "took it upon itself to decide which count the jury would have convicted on if properly instructed."

---

[4] The judge's inclusion of the phrase "in an incident separated in time" in the instructions for Counts II and III is immaterial to the offense.

*Petitioner's Opening Brief*, filed Mar. 13, 1992 in No. 15833, at 10. Petitioner argues that had his counsel raised the right to trial by jury issue during the appeal, our decision would have been different.[5]

Although we disagree with petitioner's rationale, the right to a fair jury trial includes the right to have all charges clearly presented to the jury in order to obviate the possibility of inconsistent findings of fact if the jury were to find against the defendant on all counts. *See* HRS § 701–109(1)(c) (1985 and Supp. 1991). Accordingly, the judge's instructions to the jury, even though sufficient to apprise them of the elements of the individual counts, should have also included an explanation that a unanimous guilty verdict on Count I, attempted first degree murder, would necessarily preclude guilty verdicts on Counts II and III, second degree murder and attempted second degree murder, respectively.[6] The omission of proper instructions allowed the jury's verdicts to contain inconsistent factual findings in violation of HRS § 701–109(1)(c), which states:

> (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:
>
> . . . .

---

[5] This court will not create a precedential quagmire by re–examining via a rule 40 petition its own opinions on the basis that the first appeal was incorrectly decided. Nevertheless, a claim of ineffective assistance of counsel requires review notwithstanding our opinion.

[6] Proper jury instructions must include a directive that a guilty verdict of first degree murder precludes a guilty verdict on second degree murder, and vice versa. *See infra* section II. B. 1.

> (c) Inconsistent findings of fact are required to establish the commission of the offenses[.]

The state of mind essential to support a charge of attempted first degree murder of two people is inconsistent with that state of mind necessary to support separate counts of second degree murder and attempted second degree murder. When the jury returned verdicts on Counts I–III, Petitioner's counsel could, therefore, have argued that HRS § 701–109(1)(c) precluded inconsistent multiple convictions arising out of the same conduct. The key issue thus becomes whether Petitioner's trial and appellate counsel's failure to raise the issue of inconsistent factual findings may have affected Petitioner's right to a fair jury trial and constituted ineffective assistance of counsel.

## 1. Inconsistent Findings of Fact

In order to understand the reason that Petitioner's convictions on Counts I–III violate HRS § 701–109(1)(c), we must examine the relationship between the crimes of first and second degree murder. A conviction for first degree murder may occur, *inter alia*, when a person "intentionally or knowingly causes the death of . . . more than one person in the same or separate incident." HRS § 707–701(a) (Supp. 1992). Several convictions of second degree murder may instead ensue if the multiple deaths result from acts committed with separate states of mind. By the following examples, we clarify the state of mind necessarily related to the first degree murder term "same or separate incident," and distinguish it from the separate states of mind related to an incident which gives rise to multiple convictions of second degree murder.

First, the requisite state of mind to cause the death of two or more persons in the same incident may be found where an actor fires one or several bullets indiscriminately into a crowd of people and more than one person dies. Such an act can readily be described as intentionally or knowingly causing the death of more than one person in the "same incident."

Second, in the case of a serial killer, the requisite state of mind to cause the death of more than one person may be found in a continuing course of conduct, or a common scheme or plan, even though the acts may be "separated in time." Whether such acts are deemed to have occurred in the "same incident" or "separate incidents," for purposes of HRS § 707–701(1)(a), will depend on factors such as location, time, and method. Even facts demonstrating that the deaths occurred only a few seconds apart could be described as "separate incidents," and may be charged as such. The key factor supporting a charge of first degree murder is the actor's state of mind.

Finally, we examine the case of an actor who causes the death of two or more people in incidents separated in time but without the intent to cause both deaths as part of a common scheme or plan. For example, an actor, in the course of committing robbery of a convenience store, shoots and kills an employee. Afterwards, a passer–by is shot and killed by the actor attempting to escape. Although two people were killed in separate incidents during the same criminal episode, the actor may not be guilty of first degree murder because the requisite state of mind to cause the death of two or more people in the same or separate incident arguably is lacking. The actor would possibly be guilty, however, of two separate counts of second degree murder.

As the examples indicate, the murder or attempted murder of two or more persons by a single actor may or may not be committed with separate states of mind. The legislature recognized these distinctions when it amended HRS § 707–701 in 1986 to broaden the first degree murder category.[7] Both the House and Senate stated, "[y]our Committee intends that persons convicted of serial killings be subject to life imprisonment without parole." Serial killings are acts occurring in "series" and are by definition, therefore, related events.[8] The state of mind of the accused provides the relationship between the murders of a serial killer and is the distinguishing factor between separate counts of second degree murder and one count of first degree murder. The state of mind with which the actor acts must be clearly and unambiguously established in order to sustain a first or second degree murder conviction.

---

[7] Prior to 1986, the aggravating circumstances that would subject a convicted murderer to life imprisonment *without* parole were contained in a sentence enhancing statute, HRS § 706–606 (1985). The aggravating facts were not essential elements of the crime of murder. *State v. Apao*, 59 Haw. 625, 634, 586 P.2d 250, 257 (1978); *State v. Lester*, 64 Haw. 659, 670, 649 P.2d 346, 354 (1982). Murder was also not to be considered a lesser included offense of murder for hire, *State v. Lincoln*, 3 Haw. App. 107, 120, 643 P.2d 807, 816 (1982); *Lester, supra,* nor a lesser included offense of the murder of a witness, *Apao, supra*; both factual situations were sufficient to enhance the sentence of murder.

In 1986, the legislature transformed the aggravating circumstances contained in § 706–606 into the elements of the new penal offense of first degree murder, § 707–701. As such, what was once referred to as simply "murder" became murder in the second degree (§ 707–701.5), a completely separate offense and never considered an included offense of murder in the first degree (§ 707–701) under any of the provisions of § 701–109(4). *See supra* note 1.

[8] WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 1303 (1989).

Thus, although the prosecutor was allowed to charge Petitioner with Counts I–III, defense counsel should have objected to the guilty verdicts because they were based on an inconsistent, irreconcilable factual premise: that Petitioner intended to murder both victims as part of the *same plan* (guilty of Count I); *and* that Petitioner acted with separate, unrelated states of mind to cause the death of each victim (guilty of Counts II *and* III). Because a jury could have viewed the evidence as sufficient to support either scenario, it was the *jury's* function to determine beyond a reasonable doubt which of the two mutually exclusive states of mind Petitioner had during the incident. It was error for them to decide that Petitioner had both. *Milanovich v. United States*, 365 U.S. 551, 555–56 (1961) (Defendant could not be guilty of the offense of larceny of property and of the offense of receiving that same property.); *People v. Hoffer*, 106 Ill. 2d 186, 478 N.E.2d 335, 340, *cert. denied*, 474 U.S. 847 (1985) (Guilty verdicts on charges of murder and manslaughter imply that jury found two mutually exclusive mental states for same act requiring reversal and new trial on all counts.)

An examination of Petitioner's prior counsel's appellate brief explains his failure to object to the multiple, inconsistent guilty verdicts on Counts I–III. Prior counsel harbored a fundamental misapprehension of the relationship between first and second degree murder. Counsel argued that as long as an actor caused the death of two or more people he or she could be convicted, barring other defenses, of first degree murder.[9] Such a conviction would

---

[9] Defendant–Appellant's Opening Brief states:

Whether or not multiple killings were committed with an intent to kill multiple persons or to kill specific, individual persons, or

be possible, he asserted, whether or not the killings occurred in related or unrelated incidents.[10] This interpretation fails to account for the greater culpability of the more serious offense, is clearly contrary to the legislative history, and violates HRS § 701–109(1)(c).

Counsel *could* have argued, both at trial and on appeal, that the factual inconsistency concerning Petitioner's state of mind inherent in the multiple convictions violated § 701–109(1)(c). If argued on appeal, the inconsistent verdicts concerning multiple convictions would have required reversal and a new trial. *Milanovich*, 365 U.S. at 555–56; *United States v. Daigle*, 149 F. Supp.

---

whether they were committed in the same incident, in a single course of action, or in separate actions, is entirely irrelevant to establishing whether the offense of first or second degree murder is committed. The only relevant factor is whether one killing or more than one killing was committed.

Opening brief, filed 19 April 1989, at 31.

[10] Whether Petitioner intended to cause the death of the two victims as part of a common scheme or plan was not an issue in Petitioner's trial counsel's defense strategy, nor was it made an issue on appeal. Had Petitioner's prior counsel considered this issue as a defense strategy before, during, or after the trial, he would have understood the factual inconsistency inherent in multiple verdicts of first and second degree murder.

Petitioner's counsel's trial defense was, to be generous, inconsistent. Counsel's opening statement prepared the jury to expect evidence showing the elements of extreme emotional distress brought on by Petitioner's intoxication combined with the confrontational nature of the circumstances and his knowledge that the people at the party were allegedly those who may have killed his brother only one year earlier. Such evidence did not surface at trial. The defense, after opening statement, was that the police identified the wrong person and that the prosecution's case rested on faulty identification. It is no surprise, then, that the jury discredited the evidence in Petitioner's favor and counsel's closing arguments that Petitioner was not the perpetrator nor had he any motive to be.

409, *aff'd per curiam,* 248 F.2d 608 (D.C. Cir. 1957), *cert. denied,* 355 U.S. 913 (1958); *Hoffer,* 106 Ill. 2d at 195, 478 N.E.2d at 340 (mutually exclusive guilty verdicts require reversal and a new trial).  The question is whether petitioner's prior counsel was constitutionally *required* to raise such an issue.

## 2.  Ineffective Assistance of Counsel

Petitioner asserts that his prior counsel failed to present the issue of a potential violation of his constitutional right to trial by jury at trial and on appeal.  First, any complaint of counsel's ineffective assistance *at trial,* contained in a Rule 40 petition, is usually waived pursuant to HRPP 40(a)(3), which states:

> **Inapplicability.**  Said proceeding shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or waived.  An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Where petitioner has been represented by the same counsel both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal. *Matsuo v. State,* 70 Haw. 573, 577, 778 P.2d 332,

334 (1989) (Rule 40 petitioner's claim of ineffective assistance of trial counsel was not waived where his trial counsel failed to perfect appeal); *McBride v. State*, 595 N.E.2d 260 (Ind. App. 1992). The issue of ineffective assistance of *appellate* counsel is also properly before us, as it could not have been raised until after the conclusion of the appeal. *Bryant v. State*, 6 Haw. App. 331, 335, 720 P.2d 1015, 1019 (1986).

No constitutional right to an appeal exists. *State v. Dannenberg*, 74 Haw. 75, 837 P.2d 776, 778 (1992); *McKane v. Durston*, 153 U.S. 684 (1894). Hawaii guarantees by statute the right to an appeal to every criminal defendant who deems himself or herself aggrieved by a district or circuit court judgment. HRS § 641–12 (1985) and § 641–11 (Supp. 1991), respectively. For appeals as of right, a criminal defendant has the right to assistance of counsel pursuant to the Due Process and Equal Protection Clause. U.S. CONST. amend. XIV; HAW. CONST. art. I, § 5; *Douglas v. California*, 372 U.S. 353, *reh'g denied*, 373 U.S. 905 (1963). An appeal as of right is adjudicated in accordance with due process of law only when the appellant has the *effective* assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396, *reh'g denied*, 470 U.S. 1065 (1985). The burden to show ineffective assistance of trial or appellate counsel rests with the petitioner. *Kimball v. Sadaoka*, 56 Haw. 675, 676, 548 P.2d 268, 269 (1976); *State v. Antone*, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980).

No Hawaii Supreme Court case has defined the standard by which the effectiveness of appellate counsel is to be judged.[11] Federal jurisdictions have applied the

---

[11] In *Kimball v. Sadaoka*, 56 Haw. 675, 548 P.2d 268 (1976), the court, without enunciating a standard, found that an appellant, whose

standards for evaluating trial counsel to the actions of appellate counsel. *Griffen v. Aiken*, 775 F.2d 1226 (4th

---

counsel failed to raise an issue in his written briefs but who nevertheless was permitted to present the question in his oral argument, was not denied effective assistance of appellate counsel because the issue not only lacked merit but was, in fact, noticed by the court. The outcome in *Kimball* is consistent with the standard enunciated herein. In *Bryant v. State*, 6 Haw. App. 331, 720 P.2d 1015 (1986), the Intermediate Court of Appeals (ICA), relying on federal case law, directly addressed the standard for appellate counsel's performance. The standard of review enunciated in *Bryant* focused on whether appellate counsel's choice of issues on appeal fell below "an objective standard of reasonableness." Only if omitted appellate issues were "significant and obvious," would counsel's performance be questioned. Furthermore, any omitted "significant and obvious" issues should then be compared to those issues originally raised to determine if the omitted issues are "clearly more likely to result in reversal or an order for a new trial." The two part test enunciated in *Bryant* thus imposes a dual burden upon a criminal appellant to prove ineffectiveness of appellate counsel, which is analogous to the standard utilized in federal jurisdictions.

Federal cases concerning effective assistance of trial and appellate counsel rely on the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), a test criticized as being too burdensome for defendants to meet because it imposes a double burden upon defendants trying to show their counsel's ineffective assistance, resulting in a prejudice requirement almost impossible to surmount. *State v. Smith*, 68 Haw. 304, 310 n.7, 712 P.2d 496, 500 n.7 (1986). *Strickland* required not only that trial counsel's action or omission be an "unprofessional error," but that that error resulted in a "reasonable probability that . . . the result of the proceeding would have been different." 466 U.S. at 694. The holding in *Smith* specifically rejected the standard enunciated in *Strickland*. *Id.* *Bryant*'s reliance on federal case law to establish a standard for effective assistance of appellate counsel is inconsistent with our holding in *Smith* and inherently suspect. The "significant and obvious" and "clearly more likely" standards, aside from being vague, are indistinguishable from the burdensome prejudice standard enunciated in *Strickland* and its progeny. Moreover, to the extent that the holding in *Bryant* centers the analysis on the decision of the appellate court hearing the issues, rather than on the possible effect an omitted issue would have had on the trial court, *Bryant* is further disapproved.

Cir. 1985), *cert. denied*, 478 U.S. 1007 (1986); *Schwander v. Blackburn*, 750 F.2d 494, 502 (5th Cir. 1985); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986); *Beavers v. Lockhart*, 755 F.2d 657, 660–61 (8th Cir. 1985). We have declined, however, to adopt the federal standard for reviewing trial counsel's performance. *State v. Smith*, 68 Haw. 304, 310 n.7, 712 P.2d 496, 500 n.7 (1986). Because we believe it appropriate to extend our stricter review of counsel's performance to the appellate stage in order to more fully protect the defendants' rights, an outline of the current trial standard is necessary.

### Ineffective Assistance at Trial

In any claim of ineffective assistance of trial counsel, the burden is upon the defendant to demonstrate that, in light of all the circumstances, counsel's performance was not objectively reasonable — *i.e.*, "within the range of competence demanded of attorneys in criminal cases." *State v. Kahalewai*, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In *State v. Antone*, we set forth a two–part test requiring defendant to show "specific errors or omissions . . . reflecting counsel's lack of skill, judgment, or diligence[,]" and that "these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Antone*, 62 Haw. at 348–49, 615 P.2d at 104. "An accused's potentially meritorious defenses include the assertion of his constitutional rights." *Id.* at 349 n.1, 615 P.2d at 104 n.1 (citing *Kahalewai*, 54 Haw. at 32, 501 P.2d at 980).

General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific

actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny. ***State v. Tyrrell***, 60 Haw. 17, 30–32, 586 P.2d 1028, 1036 (1978) ("Decision by counsel not to subject his client to the rigors of a [mental] examination pursuant to § 704–404 cannot be considered unreasonable on its face"); ***Kahalewai***, 54 Haw. at 32, 501 P.2d at 980. If, however, the action or omission had no obvious basis for benefitting defendant's case *and* it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then the knowledge held and investigation performed by counsel in pursuit of an informed decision will be evaluated as that information that, in light of the complexity of the law and the factual circumstances, an ordinarily competent criminal attorney should have had. ***State v. McNulty***, 60 Haw. 259, 269, 588 P.2d 438, 446 (1978), *cert. denied*, 441 U.S. 961 (1979) ("The failure of counsel to assert every novel, albeit plausible, legal theory in the defense of an accused does not in itself reflect his ignorance of the law."); ***Kahalewai***, 54 Haw. at 32, 501 P.2d at 980 ("[W]hether counsel's actions were the result of informed judgment or constitutionally inadequate preparation."). An informed, tactical decision will rarely be second–guessed by judicial hindsight. *McNulty*, 60 Haw. at 270, 588 P.2d at 446 (Decision to call witness is normally matter within the judgment of counsel); ***Stough v. State***, 62 Haw. 620, 625, 618 P.2d 301, 305 (1980) (per curiam). If the record is unclear or void as to the basis for counsel's actions, counsel shall be given the opportunity to explain his or her actions in an appropriate proceeding before the trial court judge. ***Matsuo***, 70 Haw. at 578, 778 P.2d at 335.

Determining whether a defense is "potentially merito-rious"[12] requires an evaluation of the possible, rather than probable, effect of the defense on the decision maker. Appellate courts defer to the judge or jury as fact finder unless no substantial evidence existed for their finding because the fact finder is uniquely qualified to evaluate the credibility of witnesses and to weigh the evidence. Accordingly, no showing of "actual" prejudice is required to prove ineffective assistance of counsel.[13] *State v. Aplaca*, 74 Haw. 54, 73, 837 P.2d 1298, 1308 (1992); *Smith*, 68 Haw. at 310 n.7, 712 P.2d at 500 n.7; *Antone*, 62 Haw. at 348–49, 615 P.2d at 104.

---

[12] The Supreme Court of California in *People v. Hernandez* equated "withdrawal of a potentially meritorious defense" with whether "it is reasonably probable a determination more favorable to defendant would have resulted absent counsel's failings." 763 P.2d 1289, 1322, 47 Cal. 3d 315, 253 Cal. Rptr. 199 (1989). The latter part of the equation is similar to the rule enunciated in *Strickland*, where an additional show-ing of prejudice must be made such that appellate counsel's failure to present significant and obvious issues would establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We have explicitly rejected the federal standard of review in inef-fective assistance of counsel cases. *See supra* note 11. In so doing, we have not only refused to equate the two standards cited in *Hernandez* but have also rejected the double burden imposed, as well as the remainder of *Strickland*'s and its federal progeny's unduly restrictive view of what actions or omissions of counsel would constitute "ineffec-tive assistance."

[13] To the extent that our holding in *State v. Torres*, 54 Haw. 502, 510 P.2d 494 (1973) (requiring a showing of actual prejudice resulting from denial of a trial continuance following a last minute change in court appointed counsel) is inconsistent with our holding herein, it is limited to its facts. To the extent that our holding in *Stough v. State*, *supra*, is inconsistent with our holding herein, it is overruled.

In *Aplaca*, counsel's failure to call witnesses that could have bolstered defendant's credibility constituted ineffective assistance where the jury's decision rested upon the credibility of the defendant and the victim. We stated, "[a]lthough we, as an appellate court, *cannot predict the exact effect* these prospective witnesses would have had on the trial court's assessment of [the victim's and the defendant's] credibility, we firmly believe that such testimony *could have had* a direct bearing on the ultimate outcome of the case." (Emphasis added.) ***Aplaca***, 74 Haw. at 73, 837 P.2d at 1308.

### Ineffective assistance on appeal

The appellate court's purpose is to ensure defendant's right to a fair trial. Appellate courts neither find facts, except to determine if substantial evidence existed to support the trial court's conclusions, nor judge credibility, nor weigh the evidence. Nonmeritorious arguments or explanations are discarded without prejudicial effect. Moreover, appellate courts may dispense with oral argument at their discretion. As such, it is counsel's responsibility, in the limited time and space allowed, to present issues that may have influenced the *trial court's* decision adversely to his or her client. Our focus, therefore, is not upon the possible, or even probable, influence appellant's counsel's actions had on the appellate court, but, instead, we center on whether counsel informed him or herself enough to present appropriate appealable issues in the first instance.

An "appealable issue" is an error or omission by counsel, judge, or jury resulting in the withdrawal or substantial impairment of a potentially meritorious

defense.[14] Every appealable issue is not required to be asserted. The page limitation on the appellate briefs and the dictates of effective appellate advocacy compel appellate counsel to advance a limited number of key issues.[15]

If an appealable issue is omitted, then both the issues actually presented on appeal as well as those omitted are evaluated in light of the entire record, the status of the law and, most importantly, counsel's knowledge of both.[16] Counsel's scope of review and knowledge of the law are assessed, in light of all the circumstances, as that information a reasonably competent, informed and diligent attorney in criminal cases in our community should possess.[17] Counsel's *informed* decision as to which issues to present on appeal will not ordinarily be second–

---

[14] If the "appealable issue" raised is an action or omission of defendant's trial counsel, then that issue's "appealability" should be determined using the full standard of review for the effectiveness of trial counsel's performance as set forth herein. If, however, appellate counsel was precluded from raising an issue on appeal because trial counsel failed to preserve that issue for appellate review, that issue is not an "appealable issue."

[15] Appellate counsel is limited to thirty–five one–and–a–half spaced, typewritten pages for the opening brief. Rules 28(a) and 32(b), Hawaii Rules of Appellate Procedure. An additional ten pages is allowed for a reply brief. *Id.* If oral argument is granted, counsel is limited to 30 minutes.

[16] The quality of the legal briefs and argument concerning the issues actually appealed is considered as one factor indicative of whether counsel's omission of other appealable issues was the result of an informed decision or constitutionally inadequate preparation. *See infra* note 20.

[17] The counsel whose performance is being evaluated is given an opportunity at the trial court level to explain his or her understanding of the issues presented for review. HRPP Rule 40(f) provides in pertinent part:

guessed. Counsel's performance need not be error-less.[18] If, however, an appealable issue is omitted as a result of the performance of counsel whose competence fell below that required of attorneys in criminal cases then appellant's counsel is constitutionally ineffective.

Violation of an accused's constitutional right to effective assistance of counsel warrants the *irrebuttable* presumption of prejudice. *Antone*, 62 Haw. at 349, 615 P.2d at 104. A conviction will be reversed, therefore, if the defendant was denied effective assistance of counsel at trial, *Aplaca*, 74 Haw. at 73, 837 P.2d at 1308, or on appeal.

In the instant matter, Petitioner's convictions on Counts I, II, and III violated HRS § 701–109(c)'s clear prohibition against inconsistent factual findings. The failure to raise this issue, both at trial and on appeal, resulted in the withdrawal of not only a potentially meritorious defense, but a defense that would have altered the

---

Where the petition alleges the ineffective assistance of counsel as a ground upon which the requested relief should be granted, the petitioner shall serve written notice of the hearing upon the counsel whose assistance is alleged to have been ineffective and said counsel shall have an opportunity to be heard.

In the absence of sufficient evidence in the record on appeal, an appellate court should remand for the development of such a record. *Matsuo*, 70 Haw. at 578, 778 P.2d at 335. Where, as here, the explanation for the alleged errors is evident from the record on appeal, remand for a Rule 40(f) hearing serves no useful purpose.

[18] Although not presented, we recognize that a situation may arise where counsel's failure to raise a decisive appealable issue was not, due to the complexity in the law or facts, the result of incompetence. In such cases, we are empowered to notice the failure to raise such decisive issues as plain error, notwithstanding counsel's competent assistance. HRAP Rule 28.

outcome.[19] Therefore, Petitioner's counsel omitted an appealable issue. The failure to assert this issue was not the product of an informed decision, rather it was the result of prior counsel's inexcusable misconception of the distinction between one count of first degree murder involving two or more people and two counts of second degree murder.[20] As such, counsel's error was the result of "constitutionally inadequate preparation." *Kahalewai*, 54 Haw. at 32, 501 P.2d at 980. The failure to raise this issue on appeal fell below the competency standard required of attorneys in criminal cases in our community and constituted ineffective assistance in violation of article I, section 14 of the Hawaii State Constitution and the Sixth Amendment of the United States Constitution. Accordingly, we reverse the trial court's denial of Petitioner's Rule 40 petition and remand the case to circuit court.

In the original appeal, we cured the statutory violation created by the guilty verdicts in Counts I, II, and III by remanding to the trial court with instructions to dismiss Petitioner's convictions in Count II (murder in the second degree) and Count III (attempted murder in the

---

[19] Had Petitioner's counsel raised this issue on direct appeal, we would not have found the multiple convictions to be "harmless error." *Briones*, 71 Haw. at 95 n.2, 784 P.2d at 864 n.2.

[20] Counsel's misunderstanding of the offense of first degree murder for causing the death of two or more people was evidenced also by an issue that was argued on direct appeal. Counsel's obviously flawed argument that the *death* of the first victim rendered Petitioner's conviction of *attempted* murder in the first degree (attempting to cause the death of *two or more* people) an impossibility reinforces our conclusion that counsel's performance resulted from "constitutionally inadequate preparation."

second degree). We hereby reverse Petitioner's conviction on Count I (attempted murder in the first degree), vacate our instructions to the trial court to dismiss Counts II and III, and remand for a new trial on Counts I, II, and III in accordance with proper jury instructions consistent with this opinion.[21]

On the briefs:

*John Ashford Thompson*, for petitioner–appellant.

*Doraine Meyer Belnap*, Deputy Prosecuting Attorney, for respondent–appellee.

### CONCURRING OPINION OF LEVINSON, J., WITH WHOM MOON, J., JOINS

I concur in the result reached by the majority opinion inasmuch as it is apparent that *State v. Briones*, 71 Haw.

---

[21] Although jeopardy attached upon the original impaneling and swearing in of the jury, *State v. Moriwake*, 65 Haw. 47, 51, 647 P.2d 705, 709 (1982), the dismissals of counts II and III were not acquittals such as to implicate double jeopardy concerns.

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*State v. Hamala*, 73 Haw. 289, 293, 834 P.2d 275, 277 (1992) (quoting *Burks v. United States*, 437 U.S. 1, 15 (1978)). Because our reversals and subsequent dismissals were based on legal errors rather than factual insufficiencies, the Double Jeopardy Clauses contained in the United States and Hawaii Constitutions do not bar reinstatement of counts II and III and subsequent retrial.

86, 784 P.2d 860 (1989) (*Briones I*), was incorrectly decided, precisely because this court "took it upon itself to decide which count the jury would have convicted on if properly instructed." Majority opinion at 452. In good conscience, however, I cannot lay this court's mistake at the feet of the petitioner's appellate counsel, and I believe that it is unfair to do so. The petition in this case presents nothing new; the record before us differs not one iota from that in *Briones I*. Although I am deeply troubled by the potential "precedential quagmire" created by a reexamination of our past opinions via a Hawaii Rules of Penal Procedure (HRPP) Rule 40 petition, *see* majority opinion at 453 n.5, I cannot escape the fact that the holding of *Briones I* is tantamount to appellate "plain error" and we should simply "fess up" to it.

The majority acknowledges that the circuit court adequately instructed the jury regarding the elements of attempted first degree murder (Count I), second degree murder (Count II), and attempted second degree murder (Count III).[1] Majority opinion at 450–52. Moreover, I read the majority opinion to assume, *arguendo*, that the jury's guilty verdict as to Count I was supported by substantial evidence;[2] that conclusion is certainly implicit in *Briones I*, *see* 71 Haw. at 94–95, 784 P.2d at 864, and I subscribe to it.

---

[1] I note, however, as does the majority opinion at 452 n.4, that "in an incident separated in time" is neither an element of second degree murder, *see* HRS § 707–701.5 (Supp. 1992), nor of attempted second degree murder, *see id.* and HRS § 705–500 (1985).

[2] [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. . . . The test on appeal is not whether guilt is established

I understand the reasoning of the majority opinion to be as follows: (1) HRS § 701–109(1)(c) (1985) forbids convictions of more than one offense if inconsistent findings of fact are required to establish the commission of the offenses; (2) the state of mind with respect to the attendant circumstance of "in the same incident," necessary to support the petitioner's conviction of the attempted first degree murder of two persons, is inconsistent with that necessary to support his separate convictions of second degree murder and attempted second degree murder, *see* HRS §§ 707–701(1)(a) (Supp. 1992), 707–701.5 (Supp. 1992), 705–500 (1985), 702–206(1)(b) (1985), and 702–206(2)(b) (1985); (3) the circuit court should have instructed the jury that it could not convict on both Count I, on the one hand, and Counts II and III, on the other; (4) the circuit court's failure so to instruct the jury resulted in guilty verdicts implicitly containing inconsistent factual findings; (5) the failure of the petitioner's trial counsel to raise the issue of inconsistent verdicts constituted ineffective assistance; and (6) the petitioner is therefore entitled to a new trial on Counts I, II, and III. I agree with points (1) through (4) and point (6); on the other hand, I believe that point (5) improperly deflects responsibility from this court.

It is obvious that had the circuit court instructed the jury that it could not decide Counts II and III of the complaint if it was able to reach a unanimous guilty verdict as to Count I, and vice versa, the jury's guilty verdict as to Count I would have foreclosed it from reaching Counts II

---

beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (citations omitted).

and III, and there would have been no inconsistent verdicts. The *Briones I* court recognized as much when it held that "the [petitioner's] attempted first degree murder conviction precluded his second degree murder and attempted second degree murder convictions." 71 Haw. at 94–95, 784 P.2d at 864.

It is equally obvious, as the majority maintains at 453 of its opinion (and as the *Briones I* court should have recognized as well), that the "[circuit court's] instructions to the jury . . . *should* have . . . included an explanation that a unanimous guilty verdict on [C]ount I, attempted first degree murder, would necessarily preclude guilty verdicts on Counts II and III, second degree murder and attempted second degree murder, respectively," and that "[t]he omission of proper instructions allowed the jury's verdicts to contain inconsistent factual findings in violation of HRS § 701–109(1)(c) . . . ." (Emphasis added.) *See State v. Liuafi*, 1 Haw. App. 625, 643, 623 P.2d 1271, 1282 (1981); *cf. State v. Horn*, 8 Haw. App. 167, 169–70, 796 P.2d 503, 504–05 (1990) (cited with approval in *State v. Klafta*, 73 Haw. 109, 118, 831 P.2d 512, 517 (1992)).

I believe, however, that the majority is mistaken when it suggests that "[t]he key issue thus becomes whether [the petitioner's] . . . counsel's failure to raise the issue of inconsistent factual findings may have affected [the petitioner's] right to a fair trial and constituted ineffective assistance of counsel." Majority opinion at 454. On the contrary, "the trial court is the *sole source* of all definitions and statements of law applicable to an issue to be resolved by the jury." *State v. Williamson*, 72 Haw. 97, 103, 807 P.2d 593, 596 (1991) (emphasis added). Moreover,

> [it] is the *duty of the circuit judge* to see to it that
> the case goes to the jury in a clear and intelligent

manner, so that they may have a clear and correct understanding of what it is they are to decide, and he shall state to them fully the law applicable to the facts.

*State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) (quoting *People v. Henry*, 395 Mich. 367, 373–74, 236 N.W.2d 489, 492 (1975)) (emphasis added). And faced with inaccurate or incomplete instructions, "[t]he *trial court has a duty to*, with the aid of counsel, either correct the defective instruction or to otherwise *incorporate it into its own instruction.*" *State v. Riveira*, 59 Haw 148, 155, 577 P.2d 793, 797 (1978) (emphasis added and citations omitted); *see* HRPP 30(c) (1981). In other words, the ultimate responsibility properly to instruct the jury in this case lay with the circuit court and *not* with trial counsel.

In *Briones I*, "we affirm[ed] the [petitioner's] conviction and sentence as to the attempted first degree murder offense (Count I) . . . , reverse[d] the conviction and sentence as to the second degree murder offense (Count II) and the attempted second degree murder offense (Count III), and remand[ed] with instructions to dismiss Counts II and III." 71 Haw. at 95, 784 P.2d at 864. On the record before us at the time, which, as I have noted, has not changed one iota by the present petition, that was the wrong result for the very reasons cited by the majority opinion but unfairly charged to the petitioner's appellate counsel.

The majority's conclusion that the ultimate disposition of the present matter was somehow "altered" by the petitioner's counsel's failure to argue on appeal that the petitioner's multiple murder convictions violated HRS § 701–109(1)(c), majority opinion at 467, is, in my view, incorrect. If the *Briones I* court had merely read the very United States Supreme Court case law on which the

majority opinion now relies, it "would not have found the [petitioner's] multiple convictions to be 'harmless error.'" *See* majority opinion at 467 n.19.

As a general proposition, "[i]nconsistent verdicts are not per se grounds for reversal." *Liuafi*, 1 Haw. App. at 643, 623 P.2d at 1282; *see generally United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *United States v. Gaddis*, 424 U.S. 544, 96 S. Ct. 1023, 47 L. Ed. 2d 222 (1976); Annotation, *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information*, 18 A.L.R.3d 259 (1968). Nevertheless, *Milanovich v. United States*, 365 U.S. 551, 81 S. Ct. 728, 5 L. Ed. 2d 773 (1961), on which the majority opinion *now* relies, *see* majority opinion at 457, 458–59, and which had been on the books for eighteen years when *Briones I* was decided, is dispositive of the issue before us.

In *Milanovich*, a husband and wife were convicted of stealing property belonging to the United States, and the wife was also convicted of receiving and concealing the stolen property. *Id.* at 552, 81 S. Ct. at 728. A five–member majority of the United States Supreme Court, through Justice Stewart, held that setting aside, on appeal, a shorter concurrent sentence for receiving, following the wife's conviction of both stealing and receiving, did not cure any prejudice resulting from the district court's failure to instruct the jury that it could convict the wife of either stealing or receiving but not both. *Id.* at 555, 81 S. Ct. at 730.[3] The Court's language upon which the

---

[3] Justice Frankfurter, dissenting on behalf of four members of the *Milanovich* Court, would have affirmed the district court's imposition of the two concurrent sentences on the basis that the offenses of stealing and receiving amounted to "two clearly severed transactions"

majority apparently relies in the present case is the following:

> It is now contended that setting aside the sentence on the receiving count was not enough — that the conviction on the larceny count must also be reversed, and the case remanded for a new trial. The argument is that although the evidence was sufficient to support a conviction for either larceny or receiving, the judge should have instructed the jury that a guilty verdict could be returned upon either count but not both. It is urged that *since it is now impossible to say what verdict would have been returned by a jury so instructed, and thus impossible to know what sentence would have been imposed, a new trial is in order.*
>
> We think that the point is well taken. . . . We hold . . . that the trial judge erred in not charging that the jury could convict of either larceny or receiving, but not of both.
>
> . . . [T]here is no way of knowing whether a properly instructed jury would have found the wife guilty of larceny or of receiving (or, conceivably, of neither). Thus we cannot say that the mere setting aside of the shorter concurrent sentence sufficed to cure any prejudice resulting from the trial judge's failure to instruct the jury properly.

*Id.* at 554–55, 81 S. Ct. at 730 (emphasis added and footnote omitted).

---

involving "two behaviors or transactions by defendant clearly and decisively separated in time and in will." *Id.* at 559, 562, 81 S. Ct. at 732, 734.

*Milanovich* was distinguished by a unanimous Court, also through Justice Stewart, in *United States v. Gaddis, supra*. In *Gaddis*, the defendants were convicted of entering a federally insured bank with intent to rob it by force and violence, assault during the course of the robbery, and possessing funds stolen in the robbery. 424 U.S. at 545–46, 96 S. Ct. at 1025. The court of appeals, relying in part on *Milanovich*, reversed and ordered a new trial. *Id.* at 546–47, 96 S. Ct. at 1025–26. On certiorari, the *Gaddis* court held that: (1) the defendants, upon being convicted of robbing the bank, could not also be convicted of receiving or possessing the robbery proceeds; (2) the error could be cured by vacating the convictions for receiving the proceeds rather than by directing a new trial on all counts; and (3) the defendants' concurrent sentences imposed for bank robbery and entering the bank with intent to rob would be vacated, leaving the defendants under a single sentence imposed for assault during the course of the bank robbery. *Id.* at 550, 96 S. Ct. at 1027.

Accordingly, the *Gaddis* court reversed the judgment of the district court and remanded for imposition of sentence consistent with its opinion. *Id.* at 551–52, 96 S. Ct. at 1027. In so doing, the Court distinguished *Milanovich* as follows:

> The Court of Appeals was mistaken . . . in supposing that our decision in *Milanovich* required the ordering of a new trial as the "proper appellate remedy" for the District Judge's error in this case. The very unusual facts in that case were wholly different from those presented here.

> In *Milanovich* . . . [t]he trial judge refused to instruct the jury that the petitioner could not be convicted for both stealing and receiving the same

currency, and she was convicted and separately sentenced on both counts. This Court held that . . . the jury should have been instructed that the petitioner could not be separately convicted for stealing and receiving the proceeds of the same theft. *Since it was impossible to say upon which count, if either, a properly instructed jury would have convicted the petitioner, . . . her convictions were set aside and the case was remanded for a new trial.*

The present case is of a very different order. . . . [T]he trial judge should have dismissed Count 3 of the indictment. His error in not doing so can be fully corrected now by the simple expedient of vacating the convictions and sentences under that count.

*Id.* at 549–50, 96 S. Ct. at 1026–27 (emphasis added).

In my view, the reasoning of *Milanovich* and *Gaddis* controls the disposition of the present case, and *Briones I* is completely inconsistent with that reasoning. If, as we all agree, the circuit court had instructed the jury that it could reach Counts II and III of the complaint *only* if it was unable to arrive at a unanimous guilty verdict as to Count I, then neither we nor the *Briones I* court would have been faced with verdicts based on inconsistent factual findings.[4] But the jury was not so instructed, and, as the majority recognizes at 457 of its opinion (and the *Briones I* court *should* have recognized), the petitioner's jury could have viewed the evidence before it as sufficient to support alternative convictions of attempted first degree

---

[4] "When an instruction has been . . . explained . . . by the court, it will be presumed on appeal that the jury accepted the [instruction] as the law of the case." *State v. O'Keefe*, 45 Haw. 368, 372, 367 P.2d 91, 94 (1961) (citation omitted).

murder, on the one hand, and second degree murder and attempted second degree murder, on the other. Accordingly, unlike the record before the *Gaddis* Court, but as in *Milanovich*, it is "impossible to say upon which count . . . a properly instructed jury would have convicted the petitioner . . . ." For this reason, this court erred in *Briones I* in affirming the petitioner's attempted first degree murder conviction and remanding with instructions to dismiss the second degree murder and attempted second degree murder counts. And for the same reason, the fact that the jury actually decided Counts II and III cannot be harmless error.

I would grant the petition but would not hold that the petitioner was denied the effective assistance of counsel. Ultimate responsibility for misapprehending the relationship between existing case law and the statutory scheme created by HRS §§ 707–701 and 707–701.5 was this court's alone.