Electronically Filed
Supreme Court
SCWC-17-0000081
19-MAY-2020
07:54 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JASON K. UCHIMA,
Petitioner/Defendant-Appellant.

SCWC-17-0000081

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000081; CASE NO. 1DTA-16-01965)

MAY 19, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
CONCURRING IN PART AND DISSENTING IN PART, AND CONCURRING IN THE
JUDGMENT, AND WITH NAKAYAMA, J., DISSENTING FROM THE JUDGMENT

OPINION OF THE COURT BY POLLACK, J.

In Hawai'i, a defendant in a criminal case has a

statutory right to appeal from a district or circuit court

judgment.  In situations when defense counsel has inexcusably or

ineffectively failed to timely file the notice of appeal, we

have determined that not allowing the appeal to proceed would result in the deprivation of the defendant's due process rights.

Defendants in criminal cases also have a statutory right to seek review of an Intermediate Court of Appeals' (ICA) judgment on appeal by filing an application for writ of certiorari to this court. The effect of counsel's failure to timely file a certiorari application is no different than counsel's failure to timely file a notice of appeal--the defendant has forfeited a statutory right and been deprived of the effective assistance of counsel. Upon review of applicable precedent, we hold that certiorari review is a critical stage of the criminal proceedings during which a defendant has the constitutional right to effective assistance of counsel, which includes counsel's procedural compliance with the steps required to timely file an application for a writ of certiorari.

In this case the application for writ of certiorari was untimely filed due to an error of defense counsel or as a result of a computer system error. Regardless of the source of the error, defense counsel failed to ensure the timely filing of the certiorari application, which counsel has acknowledged. As a result, the defendant was deprived of the constitutional right to the effective assistance of counsel on discretionary review. Under these circumstances, we may consider the merits of the issues raised in the certiorari application, and we elect to do

so here.  Based upon our review of the certiorari application, we affirm the ICA's judgment on appeal.

## I.    BACKGROUND AND TRIAL

On May 31, 2016, the State of Hawai'i charged Jason K. Uchima by complaint in the District Court of the First Circuit (district court) with operating a vehicle under the influence of an intoxicant (OVUII) in violation of HRS § 291E-61(a)(1)[1] and/or (a)(3).[2]  Uchima pleaded not guilty to the charge.

Prior to trial, Uchima filed a motion to suppress evidence seized or information obtained by the Honolulu Police Department (HPD) after he was arrested, including all statements made by him to law enforcement.  Uchima argued that he was in custody when he was instructed by HPD Officer Richard Townsend to exit his vehicle and asked to participate in a field sobriety test (FST) as he "was clearly not free to leave," and that he

---

[1]    HRS § 291E-61(a)(1) (Supp. 2015) provides as follows:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[2]    HRS § 291E-61(a)(3) (Supp. 2015) provides as follows: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: . . . . With .08 or more grams of alcohol per two hundred ten liters of breath[.]"  The State's motion to strike this portion of the charge was granted prior to the commencement of trial.

was subject to interrogation when Officer Townsend asked him "medical rule out" questions[3] because such questions are likely to elicit an incriminating response.  Uchima maintained that the police's failure to provide him with Miranda warnings prior to custodial interrogation violated his rights under the federal and state constitutions and required the suppression of his statements to law enforcement.

The parties stipulated to consolidate the evidentiary hearing on the motion to suppress with the trial of the OVUII charge.[4]  A bench trial was held on November 4, 2016, and January 24, 2017.[5]  The State presented the testimony of one witness, Officer Townsend.

Officer Townsend testified that, on May 14, 2016, around 12:45 a.m., he stopped Uchima's vehicle after he observed it crossing over the broken white lines of the road for approximately 30 to 40 yards along Beretania Street before the Punchbowl intersection.  Officer Townsend stated that, when he

---

[3] Uchima contended that medical rule-out questions include the following: whether the person has any physical defects or speech impediments, whether the person is taking any medication, and whether the person is under the care of a physician, a dentist, or an optometrist.

[4] We recently held in State v. Chang, 144 Hawai'i 535, 556, 445 P.3d 116, 137 (2019), that courts may not consolidate a motion to suppress hearing with trial.  However, Chang's holding was prospective and does not affect the determination of issues before us.  See id.

[5] The Honorable James H. Ashford presided.

pulled the vehicle over, Uchima was in the driver's seat and had the odor of alcohol, slurred speech, red and watery eyes, and his face was flushed. The officer testified that he explained to Uchima why he had pulled him over and asked for Uchima's driver's license. Officer Townsend said that he had to ask Uchima questions "a couple of times" because he could not understand what Uchima was saying.

Based on his observations, Officer Townsend testified, he asked Uchima if he would participate in an FST, and Uchima consented. According to the officer, Uchima appeared unsteady on his feet as he exited his vehicle. Officer Townsend stated that he explained the three tests consisting of the FST--the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test--to Uchima before proceeding with the tests. Officer Townsend related that, during administration of the FST, Uchima stated that he understood the instructions to each of the tests.

With regard to the horizontal gaze nystagmus test, Officer Townsend testified that Uchima was instructed to keep his head still and follow the officer's pen only with his eyes but that Uchima could not keep his head still despite being repeatedly told do so. As to the walk-and-turn test, Officer Townsend testified that he instructed Uchima to take nine "heel-to-toe" steps using an imaginary line, turn, then return nine

heel-to-toe steps back, and to count aloud the number of steps he took.  According to Officer Townsend, Uchima did not count out loud, took ten steps instead of nine on each pass, did not touch his heel to his toe during his steps, stepped off line on each step, had his hands raised, paused once for several seconds to keep balance, and swayed as he walked.  On the one-leg stand test, Officer Townsend testified that Uchima's performance deviated from the instructions: he had difficulty balancing while his right leg was raised, his arms were raised to about mid-torso rather than at his sides, and he hopped on his planted foot during the last ten seconds of the test.

Officer Townsend stated that following the conclusion of the three tests he informed another officer of Uchima's performance, and the second officer placed Uchima under arrest.

In response to defense counsel's questions, Officer Townsend testified that he went over the medical rule-out questions with Uchima prior to conducting the FST.  Officer Townsend explained that he asked Uchima whether he was under the care of a doctor or dentist, whether he was taking any medication, whether he was diabetic or epileptic, and whether he had any physical disabilities.  Uchima responded in the negative to the questions, Officer Townsend testified.

After the conclusion of the evidence, the district court ruled upon the motion to suppress.  The district court

determined that Uchima was not subjugated to the will of the examiner and that the situation only became "custodial" at the conclusion of the third test.  As to whether an interrogation occurred, the court concluded that the questions asked of Uchima when he was in the car were not likely to yield incriminating information and that the same was true with questions as to whether Uchima would like to exit the car, whether he was willing to participate in an FST, and whether he understood the instructions provided during each of the three tests.  The court also determined that the answers to the medical rule-out questions "would have no probative value, no inculpatory or exculpatory value."  The district court accordingly denied Uchima's motion to suppress.[6]

The district court thereupon found Uchima guilty of the OVUII charge and sentenced him to community service, fine, and a one-year license revocation.[7]  Uchima appealed from the district court's January 24, 2017 Notice of Entry of Judgment and/or Order and Plea/Judgment, and its February 23, 2017 Notice of Entry of Judgment and/or Order and Plea/Judgment entered (collectively, Judgment).

---

[6]    The district court incorporated its findings and conclusions from the motion to suppress into its findings with respect to the OVUII charge.

[7]    The court imposed the community service and fine on January 24, 2017, and the license revocation on February 23, 2017.

## II. UCHIMA'S APPEAL

### A. ICA Proceedings

On appeal to the ICA, Uchima contended that the district court erred in denying the motion to suppress, arguing that his right to remain silent under article I, section 10 of the Hawai'i Constitution was violated because he was never advised of his Miranda rights and that his verbal statements and non-verbal communicative acts were the product of custodial interrogations. (Citing State v. Tsujimura, 140 Hawai'i 299, 400 P.3d 500 (2017).) Uchima also argued that the officer's medical rule-out questions and questions as to whether he understood the instructions on the FST were likely to evoke an incriminating response regardless of how he answered, and that his actual performance on the FST was a communicative response. Uchima asserted that the district court's error was not harmless beyond a reasonable doubt and that without the officer's erroneously admitted testimony, there was not substantial evidence to support his conviction. The State responded that the district court did not err and the Judgment should be affirmed.

In a summary disposition order, the ICA concluded that the admission of Uchima's performance on the FST did not violate his right against self-incrimination because performance on an FST is neither communication nor testimony. And, the ICA held, Uchima's right to remain silent was not violated when he

provided answers to the medical rule-out questions because Tsujimura concerned whether pre-arrest silence could be used as substantive evidence against the defendant and did not involve a defendant's statements to police. The ICA accordingly held that the district court did not err in admitting Officer Townsend's observations of Uchima's driving, Uchima's answers to the medical rule-out questions, and Uchima's performance on the FST. The ICA also concluded that there was substantial evidence to support Uchima's conviction. The ICA thus affirmed the Judgment.

### B. Uchima's Application for Writ of Certiorari

The ICA judgment on appeal was filed on March 19, 2018. On March 27, 2018, Uchima's motion for an extension of time to file an application for a writ of certiorari (Application) was granted, and the deadline was extended to May 18, 2018. Six days after the extended due date, Uchima filed his Application along with his counsel's motion to accept the untimely Application.

In the motion to accept, Uchima argues that this court should consider his Application on the merits despite its ostensible untimeliness because the failure to file within the deadline resulted entirely from either computer system error or his counsel's mistake. In a declaration attached to the motion, counsel for Uchima avers that he "finished drafting the

Application and believed that he properly efiled it" on May 18, 2018.  Counsel states that he would not have sought an extension of time to file the Application if he had not intended to file it.  Counsel adds that he "had no reason to suspect that there was any issue in creating Uchima's case."

Upon receiving notice on May 24, 2018, that the State had filed a motion to execute Uchima's sentence in district court, counsel states that he checked the Judiciary Electronic Filing and Service System and was unable to locate a case for Uchima's Application.[8]  Counsel explains that he also "checked his emails" and discovered that he had never received an email confirming that a case for Uchima's Application had been created on May 18, 2018.  Counsel indicates that after seeking advice, he filed the motion to accept along with the Application.  Counsel declares that he is unsure as to why the Application was not filed, surmising that it was due to user or computer system error on that particular occasion and that he has filed numerous certiorari applications in the past using the same procedure without any issues.  The State did not file an opposition to the motion to accept or a response to Uchima's Application.

---

[8]     The Judiciary Electronic Filing and Service System allows for the electronic filing of court documents.

## III. STANDARDS OF REVIEW

### A. Jurisdiction

The existence of jurisdiction is a question of law and is reviewed de novo under the right/wrong standard. Lingle v. Hawaii Gov't Empls. Ass'n, AFSCME, Local 152, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005).

### B. Motion to Suppress

We review a trial court's ruling on a motion to suppress evidence de novo to determine whether the ruling was "right" or "wrong." State v. Estabillio, 121 Hawai'i 261, 269, 218 P.3d 749, 757 (2009); State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000).

### C. Sufficiency of the Evidence

The sufficiency of the evidence is reviewed on appeal by this court as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (alteration in original) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to

11

enable a person of reasonable caution to support a conclusion.'"

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010)

(quoting Richie, 88 Hawai'i at 33, 960 P.2d at 1241).

## IV. DISCUSSION

### A. This Court Has Jurisdiction To Review the Late Filing of the Application in This Case.

HRS § 602-59 grants a party the right to petition this

court for discretionary review of an ICA judgment or dismissal

order by submitting an application for writ of certiorari no

later than thirty days after the filing of the ICA's judgment or

dismissal order.[9]  A party may extend the time for filing the

---

[9]     HRS § 602-59 (2016) provides in part the following:

(a) After issuance of the intermediate appellate court's
judgment or dismissal order, a party may seek review of the
intermediate appellate court's decision and judgment or
dismissal order only by application to the supreme court
for a writ of certiorari, the acceptance or rejection of
which shall be discretionary upon the supreme court.

(b) The application for writ of certiorari shall tersely
state its grounds, which shall include:

   (1) Grave errors of law or of fact; or

   (2) Obvious inconsistencies in the decision of the
    intermediate appellate court with that of the supreme
    court, federal decisions, or its own decision,

and the magnitude of those errors or inconsistencies
dictating the need for further appeal.

(c) An application for a writ of certiorari may be filed
with the supreme court no later than thirty days after the
filing of the judgment or dismissal order of the
intermediate appellate court.  Upon a written request filed
prior to the expiration of the thirty-day period, a party
may extend the time for filing an application for a writ of

(continued . . .)

12

certiorari application for an additional thirty days if the party files a written request prior to the expiration of the thirty-day period. HRS § 602-59(c).

In this case, Uchima requested an extension of time to file his Application. However, Uchima's counsel avers that either as a result of the judiciary's computer system or user error, the Application was not filed until six days after the extended deadline of May 18, 2018. These circumstances require us to determine whether we have jurisdiction to review the merits of Uchima's Application.

## 1. The Hawaiʻi Revised Statutes Confer a Right To Appeal and a Right To Petition This Court for Certiorari Review.

In Hawaiʻi, every defendant in a criminal case who is aggrieved by a district or circuit court judgment is guaranteed a statutory right to appeal. Briones v. State, 74 Haw. 442, 460, 848 P.2d 966, 975 (1993) (citing HRS §§ 641-11 (Supp. 1991) and 641-12 (1985)). Specifically, pursuant to HRS § 641-12(a),[10]

---

(. . . continued)

> certiorari for no more than an additional thirty days. . . .

[10]    HRS § 641-12(a) (2016) provides the following:

> Appeals upon the record shall be allowed from all final decisions and final judgments of district courts in all criminal matters. Such appeals may be made to the intermediate appellate court, subject to chapter 602, whenever the party appealing shall file notice of the party's appeal within thirty days, or such other time as may be provided by the rules of the court.

a defendant has a right to appeal from "all final decisions and final judgments of district courts in all criminal matters" to the ICA, subject to chapter 602.  Similarly, HRS § 641-11 allows appeals from circuit court judgments to the ICA in criminal matters, subject to chapter 602.[11]  Included within chapter 602, HRS § 602-59(a) gives a party the right to seek review of the ICA's judgment on appeal or dismissal order "by application to the supreme court for a writ of certiorari."  While acceptance of an application for a writ of certiorari is discretionary with this court, HRS § 602-59(a) expressly provides defendants in criminal cases with a statutory right to seek review of the ICA's judgment on appeal or dismissal order.

## 2. A Defendant in a Criminal Case Has the Constitutional Right to the Effective Assistance of Counsel During the Certiorari Stage of a Criminal Proceeding.

"Article I, section 14 of the Hawai'i Constitution guarantees a defendant in a criminal prosecution the right 'to have the assistance of counsel for the accused's defense.'" Maddox v. State, 141 Hawai'i 196, 202, 407 P.3d 152, 158 (2017)

---

[11]     HRS § 641-11 (2016) provides the following:

Any party aggrieved by the judgment of a circuit court in a criminal matter may appeal to the intermediate appellate court, subject to chapter 602, in the manner and within the time provided by the rules of court.  The sentence of the court in a criminal case shall be the judgment.  All appeals shall be filed with the clerk of the supreme court and shall be subject to one filing fee.

(quoting Haw. Const. art. I, § 14). This right is deemed so fundamental that it is specifically provided to indigent defendants in our state constitution. Haw. Const. art. I, § 14 ("The State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment.").

We have emphasized that the "right to counsel is an essential component of a fair trial" secured by article I, section 14 of the Hawaiʻi State Constitution. State v. Pitts, 131 Hawaiʻi 537, 541, 319 P.3d 456, 460 (2014); see also State v. Tarumoto, 62 Haw. 298, 299, 614 P.2d 397, 398 (1980). Accordingly, the constitutional right to be represented by counsel is guaranteed to the accused at every critical stage of the prosecution. Pitts, 131 Hawaiʻi at 541, 319 P.3d at 460 (citing Reponte v. State, 57 Haw. 354, 361, 556 P.2d 577, 582 (1976)); Haw. Const. art I, § 14. A "critical stage" of a prosecution is "any stage where potential substantial prejudice to defendant's rights inheres." Pitts, 131 Hawaiʻi at 541-42, 319 P.3d at 460-61 (internal quotations omitted) (quoting State v. Masaniai, 63 Haw. 354, 359, 628 P.2d 1018, 1022 (1981)).

We have held that critical stages of a criminal proceeding include trial, post-verdict motions, sentencing, effectuating an appeal, and minimum term hearings conducted by the Hawaiʻi Paroling Authority (HPA). Akau v. State, 144 Hawaiʻi 159, 161, 439 P.3d 111, 113 (2019) (trial); Pitts, 131 Hawaiʻi at

15

542-44, 319 P.3d at 461-63 (post-verdict motions and sentencing); Maddox, 141 Hawai'i at 207, 407 P.3d at 163 (effectuating an appeal); De La Garza v. State, 129 Hawai'i 429, 439, 302 P.3d 697, 707 (2013) (minimum term hearings).  Our decisions have highlighted the importance of counsel's assistance at these stages of the criminal proceedings.  In State v. Akau, for example, we stated that "the right to counsel is 'fundamental and essential to a fair trial.'"  144 Hawai'i at 161, 439 P.3d at 113 (brackets omitted) (quoting Gideon v. Wainwright, 372 U.S. 335, 342-44 (1963)).  In State v. Pitts, we sua sponte raised the issue of a defendant's right to counsel during post-verdict motions and held that the trial court erred by denying the defendant substitute counsel during this stage of the proceedings.  131 Hawai'i at 542, 319 P.3d at 461 ("In order to prevent similar future deprivations, we hold that the post-trial motion stage is a critical stage of the prosecution during which the right to counsel attaches[.]").  We have also recognized that counsel plays a pivotal role in ensuring a fair sentencing procedure by assisting a defendant in navigating the intricacies of the criminal process and protecting a defendant's substantial rights.  State v. Phua, 135 Hawai'i 504, 512, 353 P.3d 1046, 1054 (2015) (stating that the assistance of counsel is of "paramount importance" during sentencing because it is an "oftentimes complicated part of the criminal process" that

contains subtleties "beyond the appreciation of the average layperson").

Counsel's assistance is also essential in preserving arguments for appeal, preparing the defendant for any proceedings that may come after conviction, and taking whatever steps are necessary to protect the right to appeal.  Maddox, 141 Hawai'i at 204-07, 407 P.3d at 160-63 ("It logically follows that the steps to effectuate an appeal constitute a critical stage in the proceeding during which a defendant is entitled to counsel.").  Additionally, we have held that the assistance of counsel is crucial during post-conviction administrative proceedings before the HPA.  De La Garza, 129 Hawai'i at 441, 302 P.3d at 709 ("[A] convicted person is constitutionally entitled to be represented at the hearing by counsel who can ensure that the minimum sentence imposed by the HPA is not predicated on misinformation or misreading of court records, which is a requirement of fair play." (quoting D'Ambrosio v. State, 112 Hawai'i 446, 464, 146 P.3d 606, 624 (App. 2006))); D'Ambrosio, 112 Hawai'i at 464-65, 146 P.3d at 624-25 (holding that HPA minimum term determinations "undoubtedly" affects a person's substantial rights); see also Pitts, 131 Hawai'i at 544, 319 P.3d at 463 (observing the defendant would have benefited by having substitute counsel's guidance in preparation for proceedings before the HPA "even if there were no other sentence available

17

. . . but a life term of imprisonment with the possibility of parole").

The Hawai'i Supreme Court is the court of last resort in our state, and it is the ultimate interpreter of Hawai'i's constitutional and statutory law. State v. Santiago, 53 Haw. 254, 265, 492 P.2d 657, 664 (1971) ("[T]his court is the final arbiter of the meaning of the provisions of the Hawaii Constitution."); AlohaCare v. Dep't of Human Servs., 127 Hawai'i 76, 87, 276 P.3d 645, 656 (2012) (stating that the Hawai'i Supreme Court is the "final arbiter" of Hawai'i statutory law). In the vast majority of criminal appeals, certiorari review provides the last pathway to ensure that the defendant's substantial rights were observed during the trial and sentencing phases of the proceedings.[12] Cf. Briones, 74 Haw. at 465, 848 P.2d at 977 ("The appellate court's purpose is to ensure [a] defendant's right to a fair trial."). And much like pretrial and trial proceedings, post-verdict motions, sentencing, and minimum term hearings, certiorari review is an "oftentimes complicated part of the criminal process" such that not providing a defendant the assistance of counsel would restrict the defendant's ability to be meaningfully heard. Phua, 135

_____

[12] Court rules impose significant restrictions on post-conviction challenges. See Hawai'i Rules of Penal Procedure Rule 40.

Hawai'i at 512, 353 P.3d at 1054; see State v. Mundon, 121 Hawai'i 339, 367, 219 P.3d 1126, 1154 (2009) ("[T]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel[.]" (second alteration in original) (quoting Geders v. United States, 425 U.S. 80, 88-89 (1976))).

Initiating the certiorari review process requires a defendant to be able to understand the legal bases for the ICA's decision and have sufficient knowledge of legal principles and caselaw to challenge that decision. See HRS § 602-59(b) (requiring certiorari applications to state grave errors of law or fact, or obvious inconsistencies in the ICA's decision with state or federal caselaw). A defendant must also be aware of and comply with procedural requirements, including filing deadlines and the prescribed contents of a certiorari application. See HRS § 602-59(c) (concerning filing deadlines); Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1 (2017) (specifying sections of a certiorari application). This knowledge of law and procedure is almost uniformly beyond the ability of unrepresented defendants, and compliance with procedural requirements presents additional obstacles to incarcerated defendants. See D'Ambrosio, 112 Hawai'i at 465, 146 P.3d at 625 ("Moreover, the HPA Guidelines set forth rather complex criteria . . . ."); cf. Briones, 74 Haw. at 465, 848

19

P.2d at 977 ("[I]t is counsel's responsibility [on appeal], in the limited time and space allowed, to present issues that may have influenced the trial court's decision adversely to [their] client."). Thus, the assistance of counsel is a virtual necessity to effectively petition this court for certiorari review.[13]

We thus conclude that the right to seek certiorari review to this court is a critical stage of the criminal proceedings. Unquestionably, providing the right to counsel during this stage of the proceedings enhances the criminal justice process and provides greater assurance that the proceedings have comported with due process.[14] See Mundon, 121

---

[13] As is evident from the many cases this court reviews in which a petitioner or respondent is represented by appointed counsel, counsel's obligations do not terminate after the ICA issues a judgment on appeal; certiorari review in this court may thus be considered a "stage[] of the proceedings" and part of the "appeal" for which counsel is appointed and receives compensation as provided by statute and rule. See HRS § 802-5 (2014) (providing for reasonable compensation to appointed counsel for representation at all stages of the proceeding, including appeal); HRAP Rule 2.1(b) (2010) ("'[A]ppeal' includes every proceeding in the Hawai'i appellate courts other than an original action[.]"); HRAP Rule 39(d)(1) (2016) ("Requests for indigent fees and necessary expenses . . . shall be accompanied by a copy of the order appointing counsel" which is generally the order issued pursuant to HRS § 802-5); see also Kargus v. State, 169 P.3d 307, 313 (Kan. 2007) (treating a petition for review to the state supreme court as a "level[] of the state appellate process" in a defendant's direct appeal of a felony conviction); Am. Bar Ass'n, Criminal Justice Standards for the Defense Function, Standard 4-9.2(h) (4th ed. 2017) ("[A]ppellate counsel should ordinarily continue to represent the client through all stages of a direct appeal, including review in the United States Supreme Court."). It is not necessary, however, to resolve whether the certiorari process should be considered a step of the direct appeal.

[14] Hawai'i's statutory law provides an indigent defendant in a criminal case the statutory right to counsel on appeal, including proceedings

(continued . . .)

20

Hawaiʻi at 367-68, 219 P.3d at 1154-55 (denying the defendant the right to confer with counsel during a routine 15-minute recess improperly restricted the defendant's opportunity to be heard during the trial); Pitts, 131 Hawaiʻi at 544, 319 P.3d at 463 (denial of right to counsel affects defendants' ability to defend their "interests on a level playing field").  We therefore hold that a defendant has a constitutional right to the assistance of counsel during proceedings on certiorari review.[15]  Cf. Akau, 144 Hawaiʻi at 161, 439 P.3d at 113; Pitts,

---

(. . . continued)

in this court.  HRS § 802-5(a) ("[T]he judge shall appoint counsel to represent the [indigent] person at all stages of the proceedings, including appeal, if any." (emphasis added)).  Thus, HRS § 802-5 provides an indigent defendant in a criminal case with the right to appointed counsel on certiorari review.  The record, however, appears to indicate that Uchima is represented by privately retained counsel.  Nevertheless, as the Chief Justice aptly observes, "it would be fundamentally unfair to extend the remedy of ineffective assistance of counsel only to the indigent" and deny it to the non-indigent because they can afford counsel.  Recktenwald, C.J., Concurring and Dissenting at 3 n.2.  While we agree with this conclusion, the Chief Justice reasons therefrom that the constitutional question of the right to counsel should be avoided because "Uchima is entitled to identical relief whether his right to effective counsel stems from statute or the constitution."  Id. at 5.  But it is the due process clause of article I, section 5 of the Hawaiʻi Constitution and the Fourteenth Amendment to the United States Constitution that imposes the "standards necessary to ensure that judicial proceedings are fundamentally fair."  Lassiter v. Dep't of Soc. Servs. of Durham Cty., 452 U.S. 18, 24, 33 (1981) (due process "expresses the requirement of 'fundamental fairness'").  Thus, because the question of the right to counsel for non-indigent defendants in criminal cases is not merely a statutory question, the constitutional issue of the right to counsel on certiorari review cannot be avoided.

[15]    It would be illogical to conclude that the defendant's right to counsel granted by the Hawaiʻi Constitution ends before the defendant's opportunity to be heard before the highest court of this state, yet resumes during an administrative proceeding before the HPA, or that it protects a defendant's rights during a routine 15-minute recess to a greater extent than proceedings before the state court of last resort, whose duty it is to interpret and enforce the Hawaiʻi Constitution.  See Mundon, 121 Hawaiʻi at

(continued . . .)

131 Hawaiʻi at 541-42, 319 P.3d at 460-61; Maddox, 141 Hawaiʻi at 207, 407 P.3d at 163; De La Garza, 129 Hawaiʻi at 439, 302 P.3d at 707.

The right to assistance of counsel during certiorari review, however, "cannot be satisfied by mere formal appointment." State v. Smith, 68 Haw. 304, 309, 712 P.2d 496, 499 (1986) (quoting Avery v. Alabama, 308 U.S. 444, 446 (1940)). Rather, the constitution of the State of Hawaiʻi requires more than mere assistance. It is well settled that the constitutional right to the assistance of counsel in a criminal case is satisfied only when such assistance is effective. Maddox, 141 Hawaiʻi at 203, 407 P.3d at 159; State v. Tetu, 139 Hawaiʻi 207, 215, 386 P.3d 844, 852 (2016); Briones, 74 Haw. at 460, 848 P.2d at 975. Indeed, a primary reason that a defendant is guaranteed the effective assistance of counsel is to ensure that the defendant is not denied due process. Maddox, 141 Hawaiʻi at 206, 407 P.3d at 162 (citing Tetu, 139 Hawaiʻi at 219, 386 P.3d at 856).

Although we have not previously held that there is a right to effective assistance of counsel on certiorari review,

(. . . continued)

368, 219 P.3d at 1155; State v. Viglielmo, 105 Hawaiʻi 197, 211, 95 P.3d 952, 966 (2004) (stating that the Hawaiʻi Supreme Court is the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawaiʻi Constitution).

it is clear that not providing this right would undermine the constitutional right to assistance of counsel on such review and violate due process.  See Tetu, 139 Hawai'i at 215, 386 P.3d at 852 ("The constitutional right to the assistance of counsel is satisfied only when such assistance is effective." (internal quotations omitted) (quoting State v. Kahalewai, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972)); Maddox, 141 Hawai'i at 203, 407 P.3d at 159.  The Hawai'i Constitution therefore guarantees a defendant in a criminal case the right to the effective assistance of counsel on certiorari review in the same manner that it does during all other critical stages of the criminal proceedings.

### 3. A Defendant's Right to the Effective Assistance of Counsel Includes Compliance by Counsel with the Procedural Requirements To Timely File an Application for Writ of Certiorari.

This court has previously stated that, "[a]s a general rule, compliance with the requirement of timely filing of a notice of appeal is jurisdictional, and we must dismiss an appeal on our motion if we lack jurisdiction."  State v. Knight, 80 Hawai'i 318, 323, 909 P.2d 1133, 1138 (1996) (quoting Grattafiori v. State, 79 Hawai'i 10, 13, 897 P.2d 937, 940 (1995)).  While the rule in isolation appears inflexible, this court has allowed untimely appeals when "defense counsel has

23

inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance." Id.

In State v. Knight, the defendant filed the notice of appeal from the trial court's judgment of conviction twenty-four days after the filing deadline. 80 Hawai‘i at 323, 909 P.2d at 1138. In an affidavit attached to the statement of jurisdiction, counsel for the defendant averred that he prepared and signed the notice of appeal prior to the due date, but counsel discovered that the notice of appeal had not been filed when he returned from a business trip. Id. We held that the defendant was entitled to the effective assistance of counsel who may not deprive the defendant of an appeal by failing to comply with established deadlines. Id. at 323-24, 909 P.2d at 1138-39. Finding that it was in the interest of justice to address the merits of the defendant's appeal, this court declined to dismiss the appeal. Id. at 324, 909 P.2d at 1139.

In State v. Caraballo, the defendant withdrew his appeal based on advice from counsel. 62 Haw. 309, 310, 615 P.2d 91, 93 (1980). After the period for filing the notice of appeal expired, the defendant learned that counsel's advice was erroneous and thereafter filed a notice of appeal and a motion for leave to appeal in forma pauperis. Id. at 310-11, 615 P.2d at 93-94. In deciding to consider the case, this court noted that, while the "time requirement for filing the notice of

24

appeal has been termed 'mandatory and jurisdictional,'" several federal and state courts had "relaxed" the timeliness requirement for filing a notice of appeal when counsel for the defendant was at fault.  Id. at 312-15, 615 P.2d at 94-96.  Reasoning that the untimely nature of the appeal was due to counsel's erroneous advice, we considered the defendant's appeal on the merits.  Id. at 316, 615 P.2d at 96.

While our cases permitting untimely appeals have previously involved counsel's failure to timely perfect a notice of appeal, the statutes granting a defendant the right to appeal to the ICA and the statute providing the right to seek this court's discretionary review of the ICA's disposition are analogous in providing a statutory right to appellate review.

HRS § 641-12(a) requires that "the party appealing [a district court judgment] shall file notice of the party's appeal within thirty days, or such other time as may be provided by the rules of the court."  See also HRS § 641-11 (specifying that a defendant may appeal to the ICA from a circuit court judgment "in the manner and within the time provided by the rules of court").  In comparison, "[a]n application for a writ of certiorari may be filed with the supreme court no later than thirty days after the filing of the judgment or dismissal order of the intermediate appellate court."  HRS § 602-59(c); see also

HRAP Rule 40.1(a)(1) ("The application shall be filed within 30 days . . . .").

Although the statutes governing a notice of appeal may appear to be less absolute in their terms than the statute concerning the timing for filing a certiorari application, closer examination reveals that they are essentially equivalent. The statutes permitting a notice of appeal to be filed in accordance with the timing requirements prescribed by court rules do not contain an explicit exception for ineffective assistance or due process.[16]  See HRAP Rule 4(b)(1) (2016) ("In a criminal case, the notice of appeal shall be filed within 30 days after entry of the judgment or order appealed from."). Notwithstanding HRS § 641-12's seeming rigidity, our caselaw, as discussed supra, has allowed an appeal to proceed despite an untimely filing of a notice of appeal when defense counsel has inexcusably or ineffectively failed to perfect an appeal.

Our decisions allowing for review of the merits of an untimely appeal also illustrate that "[t]he right to counsel on appeal encompasses not only the appeal itself, but also the procedural steps necessary to bring about the appeal."  Maddox, 141 Hawaiʻi at 203, 407 P.3d at 159.  In State v. Erwin, the

---

[16]     While HRAP Rule 2 (2000) permits an appellate court to suspend the operation of the court rules for good cause, there is no indication that this rule has been invoked to allow for a late filing of a notice of appeal.

defendant's appointed counsel filed the notice of appeal thirteen days late.  57 Haw. 268, 268-69, 554 P.2d 236, 237-38 (1976) (per curiam).  Recognizing that an indigent defendant in a criminal case is entitled to court-appointed counsel who may not deprive the defendant of an appeal by electing to forego compliance with procedural rules, we concluded that counsel's failure to "commence the simple steps for appeal is a blatant denial of due process."  Id. (first citing Entsminger v. Iowa, 386 U.S. 748 (1966); then quoting Blanchard v. Brewer, 429 F.2d 89 (8th Cir. 1970)).  We therefore denied the State's motion to dismiss the appeal on the basis that the appeal was untimely filed.  Id.; see also State v. Aplaca, 96 Hawaiʻi 17, 23, 25 P.3d 792, 798 (2001) (retaining jurisdiction over defendant's appeal "in the interests of justice," notwithstanding counsel's failure to timely file a notice of appeal); Knight, 80 Hawaiʻi at 323-24, 909 P.2d at 1138-39 (applying Erwin to a criminal case without reference to whether the defendant was "indigent").[17]

---

[17]    While our cases permitting untimely appeals have involved what the appellate court characterized as a "first appeal," our statutes, rules, and caselaw indicate the appeal process includes proceedings in this court as being a stage in the appeal.  For example, HRAP Rule 2.1(b), the definitional provision for the appellate rules, provides that an "'appeal' includes every proceeding in the Hawaiʻi appellate courts other than an original action." (Emphasis added).  This unitary nature is also reflected in the statutory provision providing for the right to counsel through all steps of an "appeal."  See HRS § 802-5(a) (requiring the appointment of counsel to indigent defendants "at all stages of the proceedings, including appeal, if any" (emphasis added)); Rapozo v. Better Hearing of Hawaii, LLC, 120 Hawaiʻi 257, 262-63, 204 P.3d 476, 481-82 (2009) ("[T]he appellate process is not a

(continued . . .)

27

Likewise, it follows that counsel's failure to "commence the simple steps" to file an application for writ of certiorari--a critical stage of the proceedings in the review of a criminal conviction--constitutes ineffective assistance of counsel. Cf. Maddox, 141 Hawai'i at 203, 407 P.3d at 159 (quoting Erwin, 57 Haw. at 270, 554 P.2d at 238). The constitutional due process concerns underpinning this court's decisions permitting a defendant to pursue an untimely appeal

---

(. . . continued)

series of discrete actions, but a continuation of the proceedings initiated before lower courts.").

 Additionally, both the ICA's jurisdiction and the finality of its judgments are subject to review by this court upon the acceptance of an application for certiorari review. By statute, the ICA has jurisdiction to determine appeals from any court or agency when appeals are allowed by law. HRS § 602-57(1) (2016). However, the ICA's judgment on appeal does not become effective until the thirty-first day after entry or upon expiration of an extended deadline if the time for filing an application for writ of certiorari is extended. HRAP Rule 36(c)(1) (2016). If an application for writ of certiorari is filed, the ICA's judgment on appeal only becomes effective upon entry of the supreme court's order dismissing or rejecting the application or upon entry of the supreme court's order or other disposition affirming in whole the ICA's judgment. HRAP Rule 36(c)(2) (2016). And, pursuant to HRAP Rule 41 (2012), acceptance of an application "stays finality of the [ICA's] judgment on appeal unless otherwise ordered by the supreme court." That is, this court's acceptance of an application stays the operation of the ICA decision--which only becomes operative if the decision is wholly affirmed--demonstrating the continuing nature of the "first appeal." See HRAP Rules 36(d)(2) (2016), 41.

 Accordingly, an application to this court may be considered as a part of the "first appeal" because it amounts to a direct continuation of the initial proceedings in a defendant's direct appeal, which have not yet terminated. See HRAP Rule 41; see also State v. Garcia, 96 Hawai'i 200, 214, 29 P.3d 919, 933 (2001) ("By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed . . . ."); HRS § 602-57 (giving the ICA jurisdiction to hear appeals from "any court or agency when appeals are allowed by law" subject to "transfer . . . or review on application for a writ of certiorari" to the supreme court). However, because it is unnecessary for resolution of this case, we do not resolve whether the "first appeal" is limited to the initial review by an appellate court.

when counsel provides ineffective assistance are equally present in circumstances when counsel fails to comply with the procedural requirements to file a certiorari application. And, counsel's failure to timely file a certiorari application should similarly not result in the forfeiture of a defendant's statutory right to petition the supreme court for discretionary review. See HRS § 602-59(a); cf. Aplaca, 96 Hawai'i at 23, 25 P.3d at 798 ("[F]ailure of [the defendant's] counsel to timely file the notice of appeal does not divest [the defendant] of [the] right to appeal . . . .").

Justice Nakayama's opinion dissenting from the judgment recognizes that under our caselaw, "we have permitted the review of untimely initial notices of appeal to the ICA in limited circumstances" but does not acknowledge the interrelated nature of the constitutional and statutory rights underlying these decisions. Nakayama, J., Dissenting from the Judgment (Dissent) at 5. Instead, the dissent focuses on the difference between the ICA's mandatory review pursuant to HRS §§ 641-11 and 641-12 and discretionary review to this court under HRS § 602-59, thus overlooking the analogous procedures required to effectuate review in either court, and in turn, the resulting constitutional violation.

Under HRS §§ 641-11 and 641-12, the ICA's review is only mandatory if a notice of appeal is timely filed.

Similarly, discretionary review under HRS § 602-59 is dependent on the timely filing of an application for writ of certiorari. Under either statute, a defendant may elect not to seek appellate review. However, when a defendant chooses to seek review, counsel's failure to follow the procedural requirements under these statutes constitutes ineffective assistance of counsel on appeal regardless of whether review would have been mandatory or discretionary in the appellate court. That is, the constitutional violation is occasioned by the same procedural error of counsel.

Further, courts allowing an untimely notice of appeal were cognizant of the fact that "[t]imely filing of a notice of appeal has been held to be a jurisdictional requirement," but the courts nonetheless reasoned that counsel's failure to comply with procedural requirements deprived a defendant of due process such that review of the untimely appeal was warranted. Erwin, 57 Haw. at 269, 554 P.2d at 238; see Aplaca, 96 Hawai'i at 23, 25 P.3d at 798; Knight, 80 Hawai'i at 323-24, 909 P.2d at 1138-39. Thus, the constitutional principle driving our decisions that avoid a due process violation of a defendant's rights when a notice of appeal is untimely filed applies equally to the untimely filing of an application for writ of certiorari.

Accordingly, we hold that a defendant in a criminal case has the right to effective assistance of counsel during all

stages of an appeal, which includes procedural compliance with the statutory requirements for filing an application for writ of certiorari.  See HRAP Rule 2.1(b) ("'[A]ppeal' includes every proceeding in the Hawai'i appellate courts other than an original action[.]"); Maddox, 141 Hawai'i at 203, 407 P.3d at 159 (holding that effective assistance of counsel includes compliance with procedural rules).

### 4. This Court May Address the Merits of an Application for Writ of Certiorari When the Ineffective Assistance of Counsel Is Plain from the Record.

"[W]hen a defendant is denied an appeal because of a failure or omission of defense counsel, a defendant need not demonstrate any additional possibility of impairment to establish that counsel was ineffective under article I, sections 5 and 14 of the Hawai'i Constitution."  Maddox, 141 Hawai'i at 206, 407 P.3d at 162.  In State v. Silva, we held that "in some instances, the ineffective assistance of counsel may be so obvious from the record that a [Hawai'i Rules of Penal Procedure (HRPP)] Rule 40 proceeding would serve no purpose except to delay the inevitable and expend resources unnecessarily."[18]  75

---

[18]      HRPP Rule 40 (2006) states in relevant part as follows:

(a) Proceedings and Grounds.  The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the

(continued . . .)

31

Haw. 419, 438-39, 864 P.2d 583, 592 (1993) (citing State v. Aplaca, 74 Haw. 54, 837 P.2d 1298 (1993)); accord State v. Pacheco, 96 Hawaiʻi 83, 102, 26 P.3d 572, 591 (2001) (holding that "the record on appeal conclusively establishe[d]" that counsel rendered ineffective assistance, providing an alternative basis for vacating defendant's conviction).

Additionally, an HRPP Rule 40 post-conviction proceeding may take several years to reach a final resolution. In Villados v. State, the petitioner filed an untimely pro se application for writ of certiorari in the underlying case, contending that his court-appointed attorney was at fault for the application's untimeliness.[19] No. CAAP-15-0000111, at 2, 2018 WL 4520933 (App. Sept. 21, 2018) (SDO). This court dismissed the application as untimely. Id. Thereafter, the

---

(. . . continued)

> foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. . . .
>
> . . . .
>
> (b) Institution of proceedings. A proceeding for post-conviction relief shall be instituted by filing a petition with the clerk of the court in which the conviction took place. The clerk shall then docket the petition as a special proceeding, and in cases of pro se petitions, promptly advise the court of the petition.

[19] In an appended affidavit, the petitioner averred that counsel initially indicated that she would file an application for writ of certiorari but later informed petitioner after the deadline had passed that she would not do so. State v. Villados, No. SCWC-30442, at 2-3, 2012 WL 3262752 (Haw. July 20, 2012) (order dismissing application for writ of certiorari) (Acoba, J., dissenting).

petitioner initiated an HRPP Rule 40 proceeding in the Circuit Court of the Second Circuit (circuit court), contending that he had received ineffective assistance of counsel because of counsel's failure to file the certiorari application and requesting, inter alia, that his conviction be vacated.  Id. The circuit court determined that certiorari counsel was ineffective for failing to file the application, but it concluded that the appropriate relief was to permit the petitioner to seek review from the supreme court, which the court found that it could not grant and thus denied the petition.  Id. at 2.  Similarly, the ICA determined on appeal that though counsel provided ineffective assistance under our decision in Maddox, the appropriate remedy "would be to allow the petitioner to proceed with the appeal that was precluded by the ineffective counsel"--which relief the ICA determined must be obtained from this court.  Id. at 3-6.  Subsequently, in February 2019, more than six years after the original application was dismissed as untimely, the petitioner's certiorari application challenging the circuit court's and the ICA's denials of his HRPP Rule 40 petition was accepted by this court.  Villados v. State, No. SCWC-15-0000111, 2019 WL 845543

(Haw. Feb. 4, 2019) (order accepting application for writ of certiorari).[20]

As illustrated by Villados, requiring a defendant to initiate an HRPP Rule 40 proceeding in situations when it is clear from the record that counsel has inexcusably or ineffectively failed to pursue certiorari review is likely to be an inefficient use of judicial resources. Further, "[t]he fact that [the defendant] may have an opportunity to assert ineffective assistance of counsel in a future HRPP Rule 40 petition does not cure the fact that error has already occurred and [defendant's] substantial rights have been adversely affected." State v. Villados, No. SCWC-30442, at 10, 2012 WL 3262752 (Haw. July 20, 2012) (order dismissing application for writ of certiorari) (Acoba, J., dissenting) (citing Silva, 75 Haw. at 438-39, 864 P.2d at 592).

Post-conviction proceedings also may be deficient in being able to provide the appropriate relief to remedy counsel's ineffectiveness without returning the case to this court. Additionally, the delay caused by requiring an HRPP Rule 40 proceeding in circumstances when counsel concedes fault for a certiorari application's untimeliness--or the fault is otherwise plainly apparent from the record--is unnecessarily exacerbated.

---

[20] At the time this opinion was issued, the case was still pending before this court.

34

By proceeding instead to the merits of a certiorari application when the failure to timely file the application results from the ineffective assistance of counsel, we avoid depriving a defendant of due process and prevent unnecessary delay to the defendant whose rights have been adversely affected.[21]  Indeed, HRPP Rule 40(a) specifically provides that the establishment by rule of post-conviction proceedings "shall not be construed to limit the availability of remedies in the trial court or on direct appeal."  HRPP Rule 40(a) thus specifically authorizes a defendant to seek an available remedy on direct appeal even if relief would also be obtainable in a post-conviction proceeding.  See Silva, 75 Haw. at 438–39, 864 P.2d at 592 (refusing to adopt the prosecution's suggested general rule that a defendant may

---

[21]     The dissent's insistence that an HRPP Rule 40 proceeding is the "only legally permissible procedure," dissent at 9, does not sufficiently consider the importance of preserving a defendant's constitutional rights and the analogous caselaw applicable to the untimely filing of a notice of appeal.  The legislature has granted a defendant in a criminal case the right to appeal to the ICA and the right to seek this court's discretionary review.  See HRS §§ 641-11, 641-12, 602-59.  The dissent does not provide an adequate explanation as to why this court should treat the forfeiture of either statutory right, arising out of the same procedural error by counsel, differently.  Instead, the dissent would require a defendant to proceed with an HRPP Rule 40 petition and a likely appeal to remedy the constitutional violation in situations when the due process violation is clear from the record and this court is capable of remedying it in the first instance.  See Silva, 75 Haw. at 438-39, 864 P.2d at 592.  It is not efficient for our court system to require that a defendant initiate an HRPP Rule 40 proceeding that may take several years to resolve, in contrast to an immediate discretionary determination by this court as to whether the certiorari application should be accepted.  See, e.g., Villados, No. SCWC-15-0000111; Villados, No. CAAP-15-0000111 (as of the date of this opinion, the case initiated over six years earlier under HRPP Rule 40 as a result of counsel's admitted failure to timely file the certiorari application was still pending in this court).

only assert ineffective assistance of counsel in a post-conviction proceeding under HRPP Rule 40).

Justice Nakayama's dissent contends that our opinion "opens the door" to requiring this court to review all certiorari applications regardless of their timeliness, rendering procedural requirements for filing applications in criminal cases "moot." Dissent at 7-9. The dissent broadly overstates the limited impact of allowing this court to review applications that but for counsel's procedural error would otherwise have been timely filed.

First, attorneys in Hawai'i are subject to Rule 1.3 (2014) of the Hawai'i Rules of Professional Conduct (HRPC), which requires that, "A lawyer shall act with reasonable diligence and promptness in representing a client." As such, attorneys have a duty to comply with procedural requirements including statutory deadlines. Because counsel is required to "keep the client reasonably informed about the status of the matter," HRPC Rule 1.4(a)(3) (2014), and because a defendant in a criminal appeal is generally focused on the status of the appeal, it is unlikely that counsel's ineffectiveness in not timely filing a certiorari application would go undiscovered until years later as the

dissent portends.[22]  Dissent at 7.  Even assuming such a discovery were to occur years later, this court has discretionary authority to dismiss the application as untimely and require the defendant to proceed under HRPP Rule 40.

Second, because counsel's ineffectiveness must be clear from the record, counsel will be required to admit responsibility for the late filing, unless it is apparent from the record that counsel is at fault for the application's untimeliness.  In circumstances when the record is unclear, the court may dismiss the application so that a proceeding may be commenced in the trial court pursuant to HRPP Rule 40(f).  See HRPP Rule 40(f) (providing for an opportunity for counsel to be heard regarding allegations of ineffective assistance).  The dissent thus incorrectly assumes that an untimely application will necessarily demonstrate counsel's noncompliance with procedural requirements when this is unequivocally not the case.  Dissent at 7-8.

Further, our decision today will affect significantly fewer cases than what our law already allows when a notice of appeal is not timely filed in a criminal case.  This is because the number of potential criminal cases in which a certiorari application is not timely filed is a much smaller pool than all

_____

[22]    In this case, counsel filed the untimely application six days after the application's deadline.

37

criminal cases in which an appeal may be taken.  Additionally, counsel's ineffectiveness must be clear from the record in order for this court to consider an untimely filed application.[23] Finally, the proposition that "[s]ignificantly more judicial resources will be depleted attempting to meet these additional demands," dissent at 10, is plainly refuted by the avoidance of an unnecessary HRPP Rule 40 proceeding, the hearing on the petition, and subsequent appeals, when the untimely application is reviewed on its merits--as it would have been but for counsel's admitted error.[24]

Therefore, we hold that this court may decline to dismiss an application for writ of certiorari as untimely and proceed to review its merits when it is plain from the record that defense counsel failed to comply with the procedural requirements for filing the application.  Cf. Knight, 80 Hawaiʻi

---

[23]     Nor is there any concern that attorneys would falsely accept responsibility for filing an untimely certiorari application as doing so would violate the HRPC, render an attorney subject to disciplinary action, and affect the counsel's professional reputation.  See HRPC Rule 3.3(a)(1) (2014) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]"); HRPC Rule 8.4(c) (2014) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"); HRPC Rule 8.4 cmt. [1] (2014) (stating lawyers are subject to discipline for violating the HRPC).

[24]     For instance, in Villados, the defendant's HRPP Rule 40 petition--based solely on the claim that counsel ineffectively failed to file an application for certiorari review in the defendant's initial appeal--was subject to proceedings in both the circuit court and the ICA prior to reaching this court.  Villados, No. CAAP-15-0000111.

at 324, 909 P.2d at 1139 (declining to dismiss defendant's appeal in the interest of justice notwithstanding counsel's failure to timely file a notice of appeal).  This authority to proceed to the merits of an untimely application may be exercised when it is necessary to prevent a violation of due process or is in the interests of justice.[25]  See Aplaca, 96 Hawaiʻi at 23, 25 P.3d at 798 ("[F]ailure of [the defendant's] counsel to timely file the notice of appeal does not divest [the defendant] of his right to appeal, and, therefore, in the interests of justice, we decline to dismiss [the defendant's] appeal and retain jurisdiction over it.").

## 5. The Circumstances of This Case Merit Consideration of Uchima's Application.

Turning to the present case, in the motion to accept, counsel averred that he intended to file Uchima's Application for certiorari review and thought that he had done so, but counsel later discovered that the Application had not been

---

[25]    Justice Nakayama's dissent is mistaken that our decision "attempts to derive a new right of a criminal defendant to appeal the ICA's judgment that does not exist," dissent at 7, because our opinion only allows a defendant's application for writ of certiorari to proceed as if the constitutional violation had not occurred.  Our decision does not affect this court's ability to reject a certiorari application on its merits or dismiss it as untimely.  Instead, this opinion harmonizes and preserves the constitutional right to the effective assistance of counsel on appeal and the statutory right to petition this court for review of the ICA's decision.  Cf. Pitts, 131 Hawaiʻi at 544 n.6, 319 P.3d at 463 n.6 (stating that the court's remand order "seeks only to place Pitts in the position he would have been in had the constitutional violation never occurred" notwithstanding the deadline to file a motion for new trial).

properly filed.  If the failure to timely file the Application was the result of counsel's error, then counsel's "failure to fulfill procedural requirements resulted in the loss of [Uchima's] right" to petition this court for review.  Maddox, 141 Hawai'i at 205, 407 P.3d at 161.  Even if the failure to perfect Uchima's Application was the result of computer system error, counsel acknowledges that he did not receive an email confirming that a case for Uchima's Application was created. Counsel thus omitted to confirm that Uchima's Application was successfully filed.  See id. ("[W]e hold that when a defendant is denied an appeal because of a failure or omission of defense counsel, a defendant need not demonstrate any additional possibility of impairment to establish that counsel was ineffective . . . ."); Knight, 80 Hawai'i at 323, 909 P.2d at 1138 (declining to dismiss untimely notice of appeal when counsel indicated that he prepared and signed a notice of appeal but did not discover that it had not been filed until returning from a business trip).

Hence, Uchima did not receive effective assistance of counsel with regard to the timely filing of his Application. Although Uchima may assert an ineffectiveness assistance claim through the initiation of an HRPP Rule 40 proceeding, the record is clear that Uchima's counsel intended to file the Application and that but for counsel's error or omission the Application

40

would have been timely filed.  This court has previously ruled on ineffective assistance claims without requiring a post-conviction proceeding when the ineffective assistance of counsel was plain from the record.  See, e.g., Pacheco, 96 Hawai'i at 102, 26 P.3d at 591 (holding that the record on appeal conclusively established that counsel was ineffective); Aplaca, 74 Haw. at 72, 837 P.2d at 1307-08 (concluding counsel provided ineffective assistance based on a review of the record). Requiring Uchima to proceed with an HRPP Rule 40 petition under the facts of this case would only unnecessarily prolong final determination of Uchima's appeal and result in an inefficient use of judicial resources.  Silva, 75 Haw. at 438-39, 864 P.2d at 592 ("[I]n some instances, the ineffective assistance of counsel may be so obvious from the record that [an HRPP] Rule 40 proceeding would serve no purpose except to delay the inevitable and expend resources unnecessarily.").

Therefore, to avoid the due process violation that would otherwise occur in this case, we decline to dismiss Uchima's Application "[i]n the interest of justice" and thus proceed to consider its merits.  Knight, 80 Hawai'i at 324, 909 P.2d at 1139 (holding that it was in the "interest of justice" to address the merits of the defendant's appeal notwithstanding the untimely filing of the notice of appeal).

41

## B. The ICA Did Not Err in Affirming the District Court's Judgment.

In his application, Uchima presents two questions for review: (1) whether the ICA gravely erred in affirming the district court's denial of Uchima's motion to suppress his answers to the medical rule-out questions and his verbal statements and non-verbal communicative actions on the FST; and (2) whether the ICA gravely erred in holding that there was substantial evidence to support his conviction.

### 1. Tsujimura Is Not Applicable to the Facts of This Case.

Uchima first contends that he had a pre-arrest right to remain silent pursuant to State v. Tsujimura, 140 Hawai'i 299, 400 P.3d 500 (2017), that his verbal and non-verbal responses were obtained in violation of this right, and that his responses should therefore have been suppressed.

In Tsujimura, the defendant was charged by complaint with OVUII. 140 Hawai'i at 302, 400 P.3d at 503. At trial, an HPD officer testified that the defendant, prior to undergoing an FST, stated that he had an old injury to his left knee. Id. at 303, 400 P.3d at 504. The State on redirect examination asked the officer whether the defendant had explained while exiting the car that he could not get out of the car because of a previous leg injury. Id. at 304-05, 400 P.3d at 505-06. Over defense counsel's repeated objections, the officer responded

that "[n]o statements were made." Id. at 305, 400 P.3d at 506 (emphasis omitted). We held that the information regarding the defendant's pre-arrest silence was improperly admitted into evidence as it violated the defendant's right against self-incrimination and was used as substantive proof of guilt. Id. at 316-17, 400 P.3d at 517-18.

By contrast, this case does not involve the use of Uchima's silence against him. Here, Officer Townsend asked Uchima questions, and Uchima provided responses. For example, when asked whether he would participate in the FST, Uchima consented and exited his vehicle. In addition, the State did not seek to introduce and use evidence of Uchima's silence against him at trial. Thus, Tsujimura is not applicable to the facts of this case.

## 2. The ICA Did Not Err in Affirming the District Court's Ruling on Uchima's Motion to Suppress.

Uchima argues that he was subjected to custodial interrogation and, because he was not given Miranda warnings, his responses to Officer Townsend and the officer's description of his physical actions during the FST should have been suppressed. Uchima also argues that the medical rule-out questions were incriminating because they served to "rule in" a direct cause of impairment or "rule out" any explanation other than intoxication for deviations in a subject's FST performance.

43

Hence, Uchima contends that Officer Townsend's testimony as to his responses and performance during the FST must be suppressed as the "fruit of the poisonous tree of the preceding illegalities."

Under the Fifth Amendment to the United States Constitution and article I, section 10 of the Hawaiʻi Constitution, a person in a criminal case cannot be compelled to be a witness against oneself.  This court has long held that article I, section 10 of the Hawaiʻi Constitution provides an independent source for the protections which the United States Supreme Court enumerated in Miranda.  State v. Kazanas, 138 Hawaiʻi 23, 34, 375 P.3d 1261, 1272 (2016); see State v. Santiago, 53 Haw. 254, 265-66, 492 P.2d 657, 664 (1971).  Thus, as a matter of state constitutional law, statements stemming from custodial interrogation may not be used by the State unless it "first demonstrate[s] the use of procedural safeguards effective to secure the privilege against self-incrimination." Kazanas, 138 Hawaiʻi at 34, 375 P.3d at 1272 (quoting State v. Ikaika, 67 Haw. 563, 566, 698 P.2d 281, 283-84 (1985)).

"A critical safeguard is the Miranda warning[.]"  Id. Our caselaw has stated that "[t]wo criteria are required before Miranda rights must be given: (1) the defendant must be under interrogation; and (2) the defendant must be in custody."  State v. Kauhi, 86 Hawaiʻi 195, 204, 948 P.2d 1036, 1045 (1997)

(quoting State v. Blanding, 69 Haw. 583, 586, 752 P.2d 99, 100 (1988)).

We have previously stated that "[i]nterrogation encompasses not only express questioning, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." State v. Trinque, 140 Hawai'i 269, 277, 400 P.3d 470, 478 (2017) (alterations and internal quotations omitted) (quoting State v. Joseph, 109 Hawai'i 482, 495, 128 P.3d 795, 808 (2006)).

Here, Officer Townsend asked Uchima whether he would participate in an FST, whether he understood the instructions of the individual tests, and whether he had any questions. These preliminary questions were not reasonably likely to lead to incriminating responses because neither an affirmative or negative response to these questions is incriminating. Rather, the questions allow the officer to determine whether Uchima was willing to undergo the FST and whether he understood the officer's instructions prior to performing the three tests comprising the FST. Thus, these questions were not of such nature that Officer Townsend should have known that they were likely to elicit an incriminating response.

With respect to the medical rule-out questions asked by Officer Townsend and whether Uchima's responses to these questions should have been suppressed, the district court specifically ruled at the conclusion of the suppression hearing that the answers to the medical rule-out questions "would have no probative value, no inculpatory or exculpatory value" in the trial part of the proceeding. Thus, in essence, the district court granted the defense's motion to suppress as to the medical rule-out questions when it determined that Uchima's responses to these questions would have no inculpatory or exculpatory value. Uchima therefore can show no prejudice from Officer Townsend's testimony as to his responses to the medical rule-out questions.

Uchima's performance on the FST does not constitute incriminating statements. "[T]he privilege [against self-incrimination] is a bar against compelling 'communications' or 'testimony[.]'" State v. Wyatt, 67 Haw. 293, 303, 687 P.2d 544, 551 (1984) (quoting Schmerber v. California, 384 U.S. 757, 763-64 (1966)). In Wyatt, this court held that when conducting an FST the State does not seek "communications" or "testimony," but rather, "an exhibition of 'physical characteristics of coordination.'" Id. (quoting State v. Arsenault, 336 A.2d 244, 247 (N.H. 1975)). Here, Officer Townsend did not seek "communications" or "testimony" from Uchima. Rather, in conducting the FST, the officer sought "an exhibition of

'physical characteristics of coordination.'" Id.
"Consequently, the field sobriety test was not rendered infirm by the constitutionally guaranteed privilege against compulsory self-incrimination."[26] Id.

In sum, neither the questions asked by the officer prior to and during the administration of the FST nor Uchima's performance on the FST constituted an interrogation requiring Miranda warnings. Nor did Uchima suffer any prejudice from the testimony of his answers to the medical rule-out questions as the court accorded no evidentiary value to his responses to the questions. The ICA therefore did not err in affirming the denial of Uchima's motion to suppress.[27]

## 3. There Was Substantial Evidence To Support Uchima's Conviction.

Uchima was convicted of OVUII in violation of HRS § 291E-61(a)(1). Under HRS § 291E-61(a)(1),

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental

---

[26]    Uchima indicates in a footnote of his Application that the United States Supreme Court, in Pennsylvania v. Muniz, noted that the officer's request in that case to count aloud during two tests of the FST were "exceptions" to the Court's rule concerning "carefully scripted instructions." (Citing 496 U.S. 582, 603 n.17 (1990).) As in that case, Uchima does not argue that his failure to count during the walk-and-turn test had any independent incriminating significance. See id. We therefore do not further address this issue.

[27]    In light of our analysis, it is unnecessary to address whether Uchima was in custody for purposes of requiring Miranda warnings.

faculties or ability to care for the person and guard against casualty[.]

In this case, Officer Townsend testified that he saw Uchima's vehicle crossing over the broken white lines on Beretania Street for approximately 30 to 40 yards. The officer testified that after approaching the vehicle following the traffic stop, there was an odor of alcohol emitting from Uchima and that Uchima had slurred speech, red and watery eyes, and flushed skin. When Uchima exited his vehicle, Officer Townsend testified, Uchima was "unsteady on his feet" and had to use his hand to lean against the vehicle as support to keep his balance.

In addition, Officer Townsend's testimony indicated that Uchima demonstrated multiple clues suggesting intoxication on each of the three tests administered, including the following: on the horizontal nystagmus test--not keeping his head still while following Officer Townsend's pen with his eyes; on the walk-and-turn test--pausing and missing his heel-to-toe steps during the first nine steps, stepping off line on each step, and raising his hands to keep balance; and on the one-leg stand test--swaying in all directions, showing difficulty in balancing, and putting his foot down and hopping at different points during the test.

Viewing the evidence in the light most favorable to the State, there was substantial evidence to support Uchima's conviction of OVUII under HRS § 291E-61(a)(1).

## V.   CONCLUSION

Based on the foregoing, the ICA's March 19, 2018 judgment on appeal is affirmed.


Alen M. Kaneshiro             /s/ Sabrina S. McKenna
for petitioner
                              /s/ Richard W. Pollack

Brian R. Vincent              /s/ Michael D. Wilson
for respondent

