**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000632
21-JUN-2024
07:53 AM
Dkt. 84 SO**

NOS. CAAP-19-0000632 and CAAP-19-0000633

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


**CAAP-19-0000632**
STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JUNE E. MOORE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0001708)


and


**CAAP-19-0000633**
STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DAVID L. MOORE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0001707)


**SUMMARY DISPOSITION ORDER**
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

**David** L. Moore was charged with 24 counts of *Cruelty to Animals in the Second Degree* in violation of Hawaii Revised Statutes (**HRS**) § 711-1109(1)(b).  David's mother, **June** E. Moore, was separately charged with 24 counts of *Cruelty to Animals in the Second Degree* in violation of HRS § 711-1109(1)(b) and/or (h).  The cases involved the same 24 dogs, which were found at

**Friends for Life**, a "no-kill animal shelter" in Wai'anae, on October 12, 2016.  The cases were consolidated for jury trial.[1]

On May 9, 2019, David was found guilty as charged on all counts.  June was found guilty as charged on Count 17, and not guilty on all other counts.  A judgment of conviction was entered in each case on August 15, 2019.  David and June filed separate appeals.  We consolidated them.  We vacate both judgments, remand David's case for a new trial on all counts, and remand June's case for a new trial on Count 17 only.

David's and June's opening briefs don't comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).[2]  They fail to provide accurate, or any, citations to the record on appeal.  We could disregard David's and June's respective points of error and affirm the judgments.  See HRAP Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded, . . .").  But in criminal cases, the supreme court protects defendants' due process rights to have appeals decided on the merits.  See, e.g., State v. Uchima, 147 Hawai'i 64, 464 P.3d 852 (2020).

### David's Appeal

David purports to state five points of error.  Two are dispositive.

**(1)**  David argues the *Cruelty to Animals in the Second Degree* elements instruction was defective because it described conduct not charged in the State's complaint.[3]  "[I]t is the duty of the trial court to properly instruct the jury."  State v. Nichols, 111 Hawai'i 327, 337, 141 P.3d 974, 984 (2006).  "When

---

[1]     The Honorable Edward H. Kubo, Jr. presided.

[2]     David's appellate counsel also failed to comply with HRAP Rule 28(a) because ineffective assistance of David's trial counsel is argued, but David's opening brief was not served "on the attorney alleged to have been ineffective."

[3]     David's statement of points on appeal does not quote the instruction argued to be erroneous, as required by HRAP Rule 28(b)(4)(B).

jury instructions . . . are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Id. at 334, 141 P.3d at 981.

David was charged with violating HRS § 711-1109(1)(b) (2014). The statute provided:

> (1)   A person commits the offense of cruelty to animals in the second degree if the person intentionally, knowingly, or recklessly:
>
> . . . .
>
> (b)   Deprives a pet animal of **necessary sustenance** or causes such deprivation[.]

(Emphasis added.)

> "Necessary sustenance" means care sufficient to preserve the health and well-being of a pet animal, except for emergencies or circumstances beyond the reasonable control of the owner or caretaker of the pet animal, and includes but is not limited to the following requirements:
>
> (1)   Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight;
>
> (2)   Open or adequate access to water in sufficient quantity and quality to satisfy the animal's needs;
>
> (3)   Access to protection from wind, rain, or sun;
>
> (4)   An area of confinement that has adequate space necessary for the health of the animal and is kept reasonably clean and free from excess waste or other contaminants that could affect the animal's health; provided that the area of confinement in a primary pet enclosure shall:
>
> > (a)   Provide access to shelter;
> >
> > (b)   Be constructed of safe materials to protect the pet animal from injury;
> >
> > (c)   Enable the pet animal to be clean, dry, and free from excess waste or other contaminants that could affect the pet animal's health;
> >
> > (d)   Provide the pet animal with a solid surface or resting platform that is large enough for the pet animal to lie upon in a normal manner, or, in the case of a caged bird, a perch that is large enough for the bird to perch upon in a normal manner;

3

        (e)      Provide sufficient space to allow the pet animal, at minimum, to do the following:

            (i)   Easily stand, sit, lie, turn around, and make all other normal body movements in a comfortable manner for the pet animal, without making physical contact with any other animal in the enclosure; and

           (ii)  Interact safely with other animals within the enclosure; and

    (5)   Veterinary care when needed to prevent suffering.

HRS § 711-1100 (Supp. 2015).

The 24 counts in the State's second amended complaint against David were substantially identical:

> On or about October 12, 2016, in the City and County of Honolulu, State of Hawaiʻi, DAVID L. MOORE did intentionally, knowingly, or recklessly deprive a dog, identified as [animal number and identification number], a pet animal, of necessary sustenance or cause such deprivation, by depriving said pet animal of care sufficient to preserve the health and well-being of said pet animal; except for emergencies or circumstances beyond the reasonable control of the owner or caretaker of said pet animal, or causing such deprivation ***by, to wit***, failing to provide said pet animal with food of sufficient quantity and quality to allow for normal growth or maintenance of body weight; and/or open or adequate access to water in sufficient quantity and quality to satisfy the animal's needs; and/or an area of confinement that had adequate space necessary for the health of said pet animal and was kept reasonably clean and free from excess waste or other contaminants that could affect said pet animal's health; and/or sufficient space in the area of confinement which would allow said pet animal to easily stand, sit, lie, turn around, and make all other normal body movements in a comfortable manner without making physical contact with any other animal in the enclosure; and/or interact safely with other animals within the enclosure; and/or depriving said pet animal of veterinary care when needed to prevent suffering, thereby committing the offense of Cruelty to Animals in the Second Degree, in violation of Section 711-1109(1)(b) of the *Hawaiʻi Revised Statutes*.

(Emphasis added.)

The complaint's "to wit" clause identified the specific conduct alleged by the generic statutory definition of "necessary sustenance." See State v. Jardine, 151 Hawaiʻi 96, 101, 508 P.3d 1182, 1187 (2022) (stating that where a statutory definition is

generic, "it would be prudent for the State to incorporate a 'to wit' clause" to "descend to particulars" to "apprise a defendant of what the defendant must be prepared to meet").  The complaint did *not* charge David with failing to provide each dog with access to protection from wind, rain, or sun; or an area of confinement providing access to shelter constructed of safe materials to protect the dog from injury, enable the dog to be dry, and provide the dog with a solid surface or resting platform large enough for the dog to lie in a normal manner.

The jury was instructed:

> As to Defendant DAVID L. MOORE, there are two material elements of the offense of Cruelty to Animals in the Second Degree that the prosecution must prove beyond a reasonable doubt as to each of the 24 counts.
>
> These two elements as to each Count are:
>
> 1.    That on or about October 12, 2016, in the City and County of Honolulu, State of Hawaiʻi, the Defendant David L. Moore intentionally, knowingly, or recklessly engaged in conduct; and
>
> 2.    That such conduct deprived or caused deprivation to the relevant pet animal, referred to in that Count, of necessary sustenance.
>
> "Necessary sustenance" means care sufficient to preserve the health and well-being of a pet animal, except for emergencies or circumstances beyond the reasonable control of the owner or caretaker of the pet animal, and includes but is not limited to the following requirements:
>
> (1)    Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight;
>
> (2)    Open or adequate access to water in sufficient quantity and quality to satisfy the animal's needs;
>
> (3)    An area of confinement that has adequate space necessary for the health of the animal and is kept reasonably clean and free from excess waste or other contaminants that could affect the animal's health; provided that the area of confinement in a primary pet enclosure shall:
>
> > (a)    ***Provide access to shelter;***
> >
> > (b)    ***Be constructed of safe materials to protect the pet animal from injury;***
> >
> > (c)    Enable the pet animal to be clean, ***dry***, and free from excess waste or other

5

contaminants that could affect the pet animal's health;

(d)     ***Provide the pet animal with a solid surface or resting platform that is large enough for the pet animal to lie upon in a normal manner***, . . . ; or

(e)     Provide sufficient space to allow the pet animal, at minimum, to do the following:

    (i)     Easily stand, sit, lie, turn around, and make all other normal body movements in a comfortable manner for the pet animal, without making physical contact with any other animal in the enclosure; and

    (ii)    Interact safely with other animals within the enclosure [sic]

(4)     Veterinary care when needed to prevent suffering.

(Emphasis added.)

The jury instruction included particulars of what constituted "necessary sustenance" that were not included in the complaint's "to wit" clauses. The complaint did not apprise David that he would have to "be prepared to meet" those omitted particulars; they should not have been included in the jury instruction. The error was not harmless because Hawaiian Humane Society field services manager Harold **Han** testified, over David's objection, that the dogs were "kept on a cage made of wire mesh-type material, which is not allowed. . . . It needs to have a solid platform where the dog can get its feet 'cause the feet get irritated. So it needs to be able to get off of that wire mesh." David was not charged with failure to provide the dogs "with a solid surface or resting platform that is large enough for the [dog] to lie upon in a normal manner[.]" David was deprived of due process because the guilty verdicts[4] could have been based on uncharged conduct.

David's additional argument that "the inclusion of said extraneous elements also allowed for a non-unanimous verdict by

---

    [4]     The jury completed 48 separate verdict forms, one for each count against David and one for each count against June.

the jury" is without merit because a proper unanimity instruction was given.

(2)  If we find trial error, we must also decide any challenge to sufficiency of the State's evidence because the double jeopardy clause bars a retrial if a reviewing court finds the trial evidence legally insufficient to support a conviction. State v. Davis, 133 Hawaiʻi 102, 118, 324 P.3d 912, 928 (2014). David challenges sufficiency of the evidence by appealing the trial court's denial of his motion for judgment of acquittal.

> When reviewing a motion for judgment of acquittal, we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged.  Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Moon, 152 Hawaiʻi 195, 204, 524 P.3d 1219, 1228 (2023) (cleaned up).

David argues the State didn't introduce evidence of "when the dogs in question arrived at [Friends for Life and] what condition they were in upon arrival . . . ."  There was no such evidence.  Han testified that animal shelters ordinarily keep a record for each animal "that tracks from intake all the way through disposition for adoption."  He found no records showing when the dogs arrived at Friends for Life, or that medical checks were done on them.  But the particulars for which David was charged did not require that the State prove when the dogs arrived at Friends for Life, or their condition when they arrived.

7

David was charged with "failing to provide [the dogs] with food of sufficient quantity and quality to allow for normal growth or maintenance of body weight; and/or open or adequate access to water in sufficient quantity and quality to satisfy the animal's needs[.]" Han testified, and video and photographic evidence showed, that food bowls were empty and water bowls were dry, and "some of 'em have urine in them." There were some "Lixit" water dispensers on the property, but none of the 24 dogs had access to them. Mary Suzanne **Palumbo**, DVM, testified, "as a veterinarian, one of the things that struck me is that we saw absolutely no food or no water in the -- in any of the cages."

David was charged with failing to provide "an area of confinement that had adequate space necessary for the health of [the dog] and was kept reasonably clean and free from excess waste or other contaminants that could affect [the dog]'s health; and/or sufficient space in the area of confinement which would allow [the dog] to easily stand, sit, lie, turn around, and make all other normal body movements in a comfortable manner without making physical contact with any other animal in the enclosure[.]" Han testified he smelled feces while across Farrington Highway from the Friends for Life property. The odor became stronger as he got closer to the property. It was so severe he considered using a mask when going into one of the structures. One of the dogs had a "severe skin condition along with . . . many layers of feces and urine[.]" He saw two dogs in a cage that "just don't have enough space in there to do normal bodily functions or sit, stand, and, you know[.]" Witnesses testified there were rats, alive and dead, and fleas, ticks, and flies on the property. The dogs were infested with ticks and fleas.

David was charged with "depriving [the dogs] of veterinary care when needed to prevent suffering[.]" There was substantial evidence — witness testimony, videos, and photographs — from which a reasonable juror could conclude the dogs were suffering. The dogs had skin lesions. Their claws were not

trimmed. Carlene Takushi, DVM, testified specifically about dogs 1 through 17, that the dogs "did not receive adequate veterinary care." She described dogs with a painful eye condition called "KCS" that is treatable with medication, parvovirus, periodontal disease, and anaplasma and mycoplasma, both tick-borne diseases treatable with medication. Ehrlichia — a tick-borne disease that is potentially fatal but also treatable with medication, was found in all but two of the dogs. Palumbo testified as to the condition of dogs 18 through 24, the dogs "were all severely ill."

David also argues the State didn't introduce evidence of "[his] alleged contribution to the dire conditions many of the dogs were found in at the time of the raid." The State introduced evidence that David was the treasurer and a director of Friends for Life, a Hawaiʻi nonprofit corporation, in 2016. He became Friends for Life's president in 2017, and signed the corporation's annual report. He signed the agreement to forfeit the dogs to the Hawaiian Humane Society. Friends for Life's website identifies David as its president. David's Facebook page stated he is "Chief Pooper Scooper at Friends For Life Hawaii." The State presented substantial evidence sufficient for a reasonable mind to fairly conclude that David was guilty as charged beyond a reasonable doubt.

We need not address David's other points of error.

### June's Appeal

**(1)** June, like David, was charged with violating HRS § 711-1109(1)(b). June was also charged with violating HRS § 711-1109(1)(h) (2014), which criminalized assisting another who "[d]eprives a pet animal of necessary sustenance or causes such deprivation[.]" The 24 counts in the State's third amended complaint against June were substantially identical to the 24 counts in the second amended complaint against David. The trial court's *Cruelty to Animals in the Second Degree* elements instruction was defective because it described conduct with which

June was not charged.  June did not challenge the jury instruction, but the instructional error adversely affected her substantial rights.

> If the substantial rights of the defendant have been affected adversely, the [instructional] error will be deemed plain error.  Further, this Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981 (citations omitted). For the reasons discussed above, June was also deprived of due process because the guilty verdict on Count 17 could have been based on uncharged conduct included in the *Cruelty to Animals in the Second Degree* elements instruction.

**(2)**   June challenges the trial court's denial of her motion for judgment of acquittal.  The State introduced evidence that June owned the property where Friends for Life was located, and a pickup truck found at the property bearing the Friends for Life logo.  She was the president and a director of Friends for Life, a Hawaiʻi nonprofit corporation.  She signed Friends for Life's 2016 and 2017 tax returns as its president.  Her Facebook page stated she "Worked at Friends For Life Hawaii."  She signed an agreement, individually and as president of Friends for Life, forfeiting the dogs to the Hawaiian Humane Society.  The State introduced substantial evidence about the physical and living conditions of each of the 24 dogs that, when viewed in the light most favorable to the prosecution, would be sufficient to support a reasonable mind to fairly conclude that June intentionally, knowingly, or recklessly deprived the dogs of necessary sustenance, caused that deprivation, or assisted another in depriving the dogs of necessary sustenance or causing that deprivation.  The State presented substantial evidence sufficient for a reasonable mind to fairly conclude that June was guilty as charged beyond a reasonable doubt.

**(3)** June's other points of error are disregarded, HRAP Rule 28(b)(4), or waived, HRAP Rule 28(b)(7).

For these reasons, we vacate the judgments in 1CPC-17-1707 and 1CPC-17-1708, and remand for a new trial on all counts against David, and on Count 17 against June.

DATED: Honolulu, Hawaiʻi, June 21, 2024.

On the briefs:

Joseph R. Mottl,
for Defendant-Appellant
June E. Moore.

Kai Lawrence,
for Defendant-Appellant
David L. Moore.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge